**Mario V. RODRIQUEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 47972.**

Court of Criminal Appeals of Texas.

April 3, 1974.

Rehearing Denied May 1, 1974.

an instructed verdict in that the accomplice witnesses' testimony was not corroborated as required by Article 38.14, V.A.C.C.P.[1]

The record reflects that at approximately 2:00 a. m., on October 16, 1971, one Juan Amaro was shot to death in the Fiesta Car Lot in El Paso. Witness Antunez, night watchman at the car lot, testified that he saw deceased leave the Mi Ranchito Bar located across the street from the parking lot and walk to his car. Upon arriving at his car the deceased, who had been working as a special officer at the Mi Ranchito Bar, removed his gun and nightstick and placed them in the trunk of his car. After deceased was inside his car, six men approached the automobile, two going to the driver's side of the vehicle while the other men went to the other side of the car. Antunez, after hearing one of the men say, "This is the way we wanted to catch you," went into the building on the parking lot and called the police. While he was inside the building, Antunez heard a shot fired, looked outside and saw the men running. Antunez went outside and found deceased lying on the ground.

The court instructed the jury that the witnesses Lopez, Juarez and Guevara were accomplice witnesses as a matter of law.

Chagra & Chagra, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., Anita Ashton, Asst. Dist. Atty., El Paso, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

Appeal is taken from a conviction for murder. Punishment was assessed by the jury at twenty years.

At the outset appellant contends the court erred in not granting his motion for

Guevara testified that he met appellant at the Senorial Bar on the evening in question. When they left the bar about 2:00 a. m. they met up with Juarez and Lopez, and appellant asked them to help in beating up a special officer who had done something to his brother. While they were standing outside the Senorial Bar, appellant pointed to a man in front of the Mi Ranchito Bar located across the street and said, "Well, there's the policeman right there." They observed the deceased go to the parking lot, open the trunk of his car and place his gun inside. They followed deceased to his car and Guevara took the keys from the

[1] Article 38.14, V.A.C.C.P., provides:
"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."

ignition of the car, opened the trunk and removed deceased's pistol. Appellant asked for the gun, Guevara refused and appellant took it from him. Appellant pointed the gun toward the policeman. At this point, Guevara turned around and heard two shots. When Guevara looked back toward appellant he was still "pointing the gun." Guevara grabbed the gun out of appellant's hand and told him to run.

Accomplice witness Lopez testified that he and his brother-in-law Juarez went to the Senorial Bar the evening in question. He stated that he went with appellant and others to the parking lot where the shooting took place. He heard the two shots, but did not know who fired the gun. After the shooting he saw Guevara with a gun. Before the first shot was fired he heard someone tell the officer, "I'm going to get even with you."

Accomplice witness Juarez testified regarding appellant asking him and his brother-in-law Lopez to "help them beat a man up." Appellant then stated, "There he goes," pointing to a policeman who was going to his car in the parking lot. After reaching the car Juarez stated that Guevara removed the deceased's pistol from the trunk and appellant grabbed the pistol from Guevara's hands. After the shots were fired, Juarez observed appellant and Guevara on the driver's side of the car. Guevara had the pistol in his hands. Prior to the shooting, Juarez heard appellant say, "This is the way I wanted you."

Witness Gonzalez was in the Senorial Bar on the night in question and, upon leaving the bar around 2:00 a. m., went to the parking lot diagonally across the street where he saw a "special officer lying dead on the ground." While he was in the bar that evening he had seen appellant and accomplice witness Guevara.

Baltazar Segoviano testified that she saw appellant with other men outside a bar across the street from the parking lot where the shooting occurred about 1:30 a. m. Shortly thereafter, she saw deceased go to his car in the parking lot and place his gun and belt in the trunk of his automobile.

Rosa Maria Segoviano testified that she saw appellant and a group of men, including accomplice witness Guevara, in front of the Mi Ranchito Bar at approximately 1:30 a. m.

John White was returning home from work when he saw men gathered around a car in the parking lot in question. White heard shots and saw men running from the scene. White described one of the men standing on the driver's side of the car as being larger than the others, being about six feet, one inch and weighing about two hundred pounds. This person was further described by White as having long, wavy hair.

Witness Segoviano described appellant as being heavy and having long hair when she saw him on the night in question.

Witness Gonzalez, who had seen appellant in the Senorial Bar, described appellant as having had long hair.

Witness Antunez, the night watchman of the car lot, described one of the men on the driver's side of the car as being larger and having long hair.

▇ In determining the sufficiency of the corroboration, we must eliminate the evidence of the accomplice witness and examine evidence of other witnesses to ascertain if there be inculpatory evidence or evidence of incriminating character which tends to connect the appellant with the commission of the offense. Cherb v. State, Tex.Cr.App., 472 S.W.2d 273; Rogers v. State, Tex.Cr.App., 461 S.W.2d 399; Chambers v. State, Tex.Cr.App., 508 S.W.2d 348 (1974).

▇ Proof that the accused was at or near the scene of the crime at or about the

time of its commission, when coupled with suspicious circumstances such as unreasonableness of the hour, lack of apparent reason for such presence, being in the company of accomplice and subsequent flight, furnishes sufficient corroboration to support a conviction. Edwards v. State, Tex.Cr.App., 427 S.W.2d 629.

In the instant case the corroborating testimony places appellant in the presence of an accomplice across the street from the crime shortly before its commission at approximately 2:00 a. m. on October 16, 1971. It is noted that the testimony of Baltazar Segoviano places appellant near the crime very shortly before its commission, since her testimony reflects that she saw deceased walking toward his car shortly after seeing appellant with a group of men. When appellant was observed with an accomplice and other men prior to the crime he was described as a big man with long hair. Among the group of men who surrounded the car of the deceased shortly thereafter was a man described by the car lot employee and the witness White as being larger and having long hair.

We find that the evidence corroborates the accomplices' testimony.

Appellant contends the court erred in not granting an instructed verdict of not guilty in that the evidence was insufficient to support a conviction.

The testimony of the accomplice witnesses reflects that appellant bore ill feelings toward the deceased. He was placed at the scene of the crime with a gun in his hand by Juarez and Guevara shortly before the fatal shots were fired. While no one saw appellant fire the weapon, Guevara testified that he took the gun from appellant immediately after hearing the shots fired.

We find the testimony of the accomplice witnesses, taken with the corroborating evidence, sufficient to support the conviction. See Flores v. State, Tex.Cr.App., 491 S.W.2d 144; Ortega v. State, Tex.Cr.App., 493 S.W.2d 828.

The judgment is affirmed.

Opinion approved by the Court.