**Ellery Ross SHEETS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 58971.**

Court of Criminal Appeals of Texas, Panel No. 3.

Sept. 17, 1980.

Rehearing Denied Nov. 5, 1980.

Phillip H. Zeigler, Gatesville, for appellant.

Bobby L. Cummings, Dist. Atty., Gatesville, Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, TOM G. DAVIS and CLINTON, JJ.

OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for theft over $10,000.00. After finding appellant guilty, the jury assessed punishment at eight years.

In his sixth ground of error, appellant challenges the sufficiency of the evidence. He maintains that the evidence is insufficient to corroborate the testimony of an accomplice witness.

Nolan Marshall testified that he was a truck driver for National Convoy of Tulsa, Oklahoma. On November 24, 1976, Marshall picked up a mobile home in Stephenville which he was to transport to Antelope. Marshall stated that he left the mobile home in the parking lot of the Co–op in Gatesville because the following day was Thanksgiving. He explained that he was

not allowed to move the mobile home on holidays. Marshall returned to the parking lot the following Sunday and found the mobile home to be missing.

Deputy Bobby Williams, of the Coryell Sheriff's Office, testified that he saw a mobile home in the parking lot of the Co-op at 2:30 a. m. on November 28th. Williams stated that he returned to the Co-op the following day and the mobile home was gone.

Frank Graham testified that on November 28th, he was at the home of his nephew Troy Smith. Graham stated that about mid-morning, appellant arrived at the home and asked for Smith because he wanted Smith's help in moving a trailer. Graham stated that appellant was driving a large truck of the type which is normally used to pull mobile homes. Graham could not recall the color of the truck. Graham testified that he could not remember whether appellant wanted Smith's help in moving a "trailer" or a "trailer house." He stated that appellant could have meant a farm trailer. Furthermore, Graham was unable to determine whether appellant wanted Smith's help at that time or on some future date. Appellant left the house after being told that Smith was at work.

Mrs. James Basham testified that at approximately 10:00 a. m. on November 28th, she saw a mobile home being pulled in front of her home near Old Purmela. The mobile home Basham saw was of the same color and style as the one stolen from the Co-op parking lot. Basham was unable to see the truck that was pulling the mobile home. Later that morning, Basham saw a "cab" or "tractor part of the truck" traveling from the opposite direction from which the mobile home had been pulled. She stated that the cab was "white-colored" and that she could not see the driver. Lastly, Basham stated that she did not know if the truck she later saw was the same truck that was originally pulling the mobile home.

Bill Paul testified that on the morning of November 28th, he saw a mobile home on the side of the road just outside Purmela. Paul stated that the mobile home looked the same as the one which had been stolen from the Co-op. At the time he saw the mobile home, no truck was attached. As he was leaving, Paul observed a white truck pull over in front of the mobile home. Paul testified that he could not see the driver of the truck and did not know if the truck stopped.

Officer Bobby Dodd, of the Clifton Police Department, testified that he had been employed as a deputy sheriff for Coryell County. On January 8, 1977, Dodd found the mobile home which had been stolen from the Co-op. The mobile home was situated on property owned by Roy Chumney in Hamilton County. Dodd was assisted by John Harvey, a Hamilton County Deputy Sheriff. Harvey stated that the mobile home was recovered approximately two miles from Chumney's home.

Sidney Knight testified that he was vice-president for National Convoy. Knight stated that the mobile home taken was a 1977 Deerfield "deluxe model" with a wholesale value of $10,212.00. On January 12, 1977, Knight sold the mobile home to Chumney for the wholesale price plus $500.00 for a reward that was offered for the return of the mobile home.

The accomplice witness in this case was Troy Smith. Appellant and Smith had known each other for about 15 years. Smith related that for the past year, he and appellant had been in business together doing farm work and buying and selling machinery.

Smith stated that he received a telephone call from appellant at 9:30 a. m. on November 28th. Appellant told Smith to call Roy Chumney and tell Chumney to be at home because "somebody" was on their way to visit him. Smith made the phone call and spoke with Chumney's wife. Smith did not see appellant on the day the mobile home was taken.

The following day, Smith and appellant went to Chumney's home. Smith stated

that the purpose of the trip was to sell some hydraulic cylinders to Chumney. Smith was paid by Chumney for the cylinders.

Smith testified that while at Chumney's house, he overheard Chumney tell appellant that he (Chumney) liked the trailer house. Smith testified that Chumney gave him $1,900.00 and told him to give some of the money to appellant. Smith later gave all of the money to appellant, and appellant then gave $900.00 of it back to Smith. At the time Smith received the money, he testified that he had no idea why it was given to him.

Smith stated that he knew that Chumney had been looking for a mobile home. He further testified that appellant owned a white two-ton Chevrolet truck equipped with a gooseneck hitch. Smith related that such a truck could be used to move a mobile home. On two previous occasions, Smith and appellant had moved mobile homes.

Smith was shown to have given a statement to authorities following his arrest for the instant offense. In the statement, Smith stated that he knew that the $1,900.00 was payment for the stolen mobile home.

Art. 38.14, V.A.C.C.P., provides as follows:

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."

▮ The test as to sufficiency of the corroboration is to eliminate from consideration the evidence of the accomplice witness and then examine the other evidence to ascertain if it is of incriminating character which tends to connect the defendant with the commission of the offense. If there is such evidence, the corroboration is sufficient; otherwise it is not. *Rice v. State*, Tex.Cr.App., 587 S.W.2d 689; *Carrillo v. State*, 566 S.W.2d 902. In *Bentley v. State*, Tex.Cr.App., 520 S.W.2d 390, this Court noted:

"The mere showing that an offense occurred is not sufficient corroboration. *Windham v. State*, 479 S.W.2d 319 (Tex. Cr.App.1972); *Reynolds v. State*, 489 S.W.2d 866 (Tex.Cr.App.1972). The combined cumulative weight of the incriminating evidence furnished by the non-accomplice witnesses which tends to connect the accused with the commission of the offense supplies the test. *Perkins v. State*, 450 S.W.2d 855 (Tex.Cr.App.1970); *Windham v. State*, supra; *Colunga v. State*, 481 S.W.2d 866 (Tex.Cr.App.1972). It is not necessary that the corroboration directly link the accused to the crime or be sufficient in itself to establish guilt, *Attwood v. State*, 509 S.W.2d 342 (Tex. Cr.App.1974); *Reynolds v. State*, supra; *Rainey v. State*, 401 S.W.2d 606 (Tex.Cr. App.1966); it need only make the accomplice's testimony more likely than not. *Warren v. State*, 514 S.W.2d 458 (Tex.Cr. App.1974)."

The State correctly points out that each case must be tested on its own facts. It maintains "each of the following theft cases was similar to the present case, yet in each case the corroborating evidence was weaker; nonetheless, all were affirmed. [See] *Peaden v. State* [Tex.Cr.App.], 491 S.W.2d 136; *Todd v. State* [Tex.Cr.App.], 435 S.W.2d 511; *Faust v. State*, 237 S.W. 269; *Forward v. State* [73 Tex.Cr.R. 561], 166 S.W. 725."

While we agree that each of these cases was affirmed, we cannot agree that the corroborating evidence in each was weaker than that in the present case. In *Todd*, the defendant admitted that he burglarized a clubhouse in which some golf clubs were stolen and claimed the car in which the stolen clubs were found. In *Forward*, the defendant was present when the complainant's watch was stolen and was shown to have been the only person close enough to the complainant to have taken the watch. In *Faust*, the defendant's car was present

when the complainant's turkeys were stolen. It was also shown that the defendant was in the company of two others who were selling turkeys after the theft. Lastly, in *Peaden*, a witness testified that the defendant called him to report that he had obtained some washing machines for delivery. The machines were shown to have been stolen.

 The non–accomplice testimony in the instant case established that the mobile home was stolen from the Co–op and subsequently found on Chumney's property. There is no showing that appellant's truck hauled the mobile home. Appellant was not shown to have been in the company of the accomplice on the day the mobile home was taken. Appellant was never seen with the mobile home either at the Co–op or Chumney's property or any place in between. Lastly, there is no evidence of flight.

Finally, Graham testified that appellant wanted Smith's help in moving a trailer on the day the mobile home was taken. Graham did not know if appellant was speaking of any ordinary trailer, house trailer or farm trailer. Graham further stated that he could not tell whether appellant wanted Smith's help at that time or on some future date.

We must conclude that on the record before us, the State failed to present sufficient, non–accomplice evidence of an incriminatory nature which tended to connect appellant to the offense charged and thereby corroborated the accomplice witness Smith as required by law.

In *Ex parte Reynolds*, Tex.Cr.App., 588 S.W.2d 900, it was held that the *Burks–Greene*[1] rule barring retrial upon reversal for insufficiency of the evidence applies to cases in which the evidence is insufficient to corroborate the testimony of an accomplice witness. Having found that reversal must result in the instant case since we concluded

that the evidence is insufficient to corroborate the accomplice witness, this Court's opinion in *Ex parte Reynolds*, supra, as construing the Supreme Court's decisions in *Burks* and *Greene*, dictates that no further prosecution be had in this cause.

The judgment of conviction is set aside and is reformed to show an acquittal.

---

1. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).