Franklin **PASSMORE**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 51792.

Court of Criminal Appeals of Texas, Panel No. 2.

May 27, 1981.

Rehearing Denied July 8, 1981.

Douglas R. Woodburn, Amarillo, Robert Udashen, Dallas, for appellant.

Tom Curtis, Former Dist. Atty. & Steve Schiwetz, Former Asst. Dist. Atty., Amarillo, Danny Hill, Dist. Atty. & Wayne Bagley, Asst. Dist. Atty., Amarillo, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and TOM G. DAVIS and CLINTON, JJ.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for burglary of a building.[1] Punishment, enhanced by two prior convictions, was assessed at life.

In his first ground of error, appellant challenges the sufficiency of the evidence to support his conviction. He maintains the evidence is insufficient to corroborate the testimony of an accomplice witness.

Officer Jeffery Wilkerson, of the Amarillo Police Department, testified that on the night of September 18, 1974, he went to the Acme Brick Yard after receiving a report of a burglary in progress. As Wilkerson approached the yard, he noticed a car slowly drive away from in front of the yard. The car was pursued and stopped. Wilkerson released the driver of the car, Marvin Passmore, after checking his driver's license. Finding no evidence of a burglary at the yard, Wilkerson left only to be resummoned some twenty minutes later after receiving a second burglary report.

Wilkerson returned to the yard a second time. He related that the yard was surrounded by a fence. By shining his flashlight on a building in the yard, the officer saw a broken window and an open door. Wilkerson then spoke with Jesus Cortez at the scene of the offense. While they were talking, Cortez pointed toward two individuals who were walking nearby. Wilkerson ran to the individuals who were near some

1. On original submission, appellant's conviction was affirmed in a per curiam opinion on June 30, 1976. Appellant has been granted an out-of-time appeal by virtue of his filing of a federal writ of habeas corpus. See *Passmore v. Estelle*, 607 F.2d 662 (5th Cir. 1979).

railroad tracks and placed appellant and Jimmy Chambers under arrest. Both of the men had cuts on their arms which were bleeding.

Cortez related that his home was near the brick yard. On the night of the offense, he heard noises coming from the yard and called the police. Cortez testified that after Wilkerson had been at the yard the first time, two individuals came around the fence from behind the yard. The men were outside the fence. When Wilkerson returned to the yard, the men "ran around the building here and took to the tracks." Cortez identified appellant as one of the men he had seen outside the fence surrounding the yard.

James Duckworth testified that he was the manager of Acme Brick Yard. He related that nothing had been taken from the building. Duckworth stated that a window had been broken in order to enter the building.

Jimmy Chambers was the accomplice witness in the instant case. Chambers related that on the day of the offense, he and appellant went to the home of appellant's brother, Marvin Passmore. The three individuals then went to the Acme Brick Yard. While Passmore sat in his car in front of the yard. Chambers stated that he and appellant crawled under the fence surrounding the yard. A window was then broken and Chambers crawled into the building. He unlocked a door and appellant entered the building. Chambers stated that while he and appellant were looking for money in the building, the police arrived. The men then left the building through the unlocked door and went to a tire company which was nearby. After waiting ten minutes, Chambers and appellant returned to the yard and entered the premises after cutting through a fence. Before they had a chance to enter the building again, the police arrived a second time. Chambers testified that he and appellant then fled and were arrested a short time later.

Art. 38.14, V.A.C.C.P., provides as follows:

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."

■ The test as to sufficiency of the corroboration is to eliminate from consideration the evidence of the accomplice witness and then examine the other evidence to ascertain if it is of incriminating character which tends to connect the defendant with the commission of the offense. If there is such evidence, the corroboration is sufficient; otherwise it is not. *Sheets v. State,* Tex.Cr.App., 606 S.W.2d 864; *Rice v. State,* Tex.Cr.App., 587 S.W.2d 689. In *Bentley v. State,* Tex.Cr.App., 520 S.W.2d 390, this Court noted:

"The mere showing that an offense occurred is not sufficient corroboration. *Windham v. State,* 479 S.W.2d 319 (Tex. Cr.App.1972); *Reynolds v. State,* 489 S.W.2d 866 (Tex.Cr.App.1972). The combined cumulative weight of the incriminating evidence furnished by the non-accomplice witnesses which tends to connect the accused with the commission of the offense supplies the test. *Perkins v. State,* 450 S.W.2d 855 (Tex.Cr.App.1970); *Windham v. State,* supra; *Colunga v. State,* 481 S.W.2d 866 (Tex.Cr.App.1972). It is not necessary that the corroboration directly link the accused to the crime or be sufficient in itself to establish guilt, *Attwood v. State,* 509 S.W.2d 342 (Tex. Cr.App.1974); *Reynolds v. State,* supra; *Rainey v. State,* 401 S.W.2d 606 (Tex.Cr. App.1966); it need only make the accomplice's testimony more likely than not. *Warren v. State,* 514 S.W.2d 458 (Tex.Cr. App.1974)."

■ Proof that an accused was at or near the scene of a crime at or near the time of its commission may tend to connect the accused with the commission of a crime so as to furnish sufficient corroboration to support a conviction. *Deas v. State,* Tex. Cr.App., 531 S.W.2d 810. Sufficient corroboration of the testimony of an accomplice to

warrant a conviction may be furnished by the suspicious conduct of a defendant such as flight after a crime was committed. *Cawley v. State*, Tex.Cr.App., 310 S.W.2d 340. Finally, the presence of the accused in the company of the accomplice is a circumstance to be considered in considering the sufficiency of the evidence to corroborate an accomplice. See *Moore v. State*, Tex.Cr. App., 521 S.W.2d 263. Thus, in *Rodriguez v. State*, Tex.Cr.App., 508 S.W.2d 80, it was stated:

"Proof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with suspicious circumstances such as unreasonableness of the hour, lack of apparent reason for such presence, being in the company of accomplice and subsequent flight, furnishes sufficient corroboration [of an accomplice witness] to support a conviction. *Edwards v. State*, Tex.Cr. App., 427 S.W.2d 629." Id. 508 S.W.2d at 83.

■ The non-accomplice testimony in the instant case showed that appellant was present near the scene of the offense. At the time appellant was seen at the yard, the business had been closed for six hours. Appellant was observed in the company of the accomplice Chambers near the scene of the offense. Finally, Cortez observed appellant and the accomplice flee when the police arrived to investigate the burglary report.

We conclude that the non-accomplice testimony in the instant case tended to connect appellant with the offense and was thus sufficient to corroborate the accomplice testimony of Chambers. Appellant's first ground of error is without merit.

In his second ground of error, appellant contends the court unduly restricted his right to cross-examine the accomplice Chambers. Specifically, appellant complains of the following two instances in which he sought to ask Chambers the following questions:

"Q. You've been in jail other places since then, haven't you?

"MR. DAMBOLD: Objection Your Honor. May we approach the bench?

"THE COURT: All right.

"(Off the record discussion.)

"THE COURT: I'll sustain your objection as to whether or not Mr. Chambers has been in jail, and I will instruct the jury to disregard not only the question but the response, if any. Proceed Mr. Fairweather.

\*      \*      \*      \*      \*      \*

"Q. You've been in custody, haven't you, for the past—

"MR. DAMBOLD: Objection, Your Honor, it's immaterial where he's been.

"THE COURT: Sustained."

■ Appellant did not perfect a bill of exception or proffer proof to show what Chambers' testimony would have been. Under such circumstances, nothing is preserved for review. See *Toler v. State*, Tex. Cr.App., 546 S.W.2d 290; *Stein v. State*, Tex.Cr.App., 514 S.W.2d 927. Appellant's second ground of error is overruled.

■ In his third ground of error, appellant contends he was denied the effective assistance of counsel. Initially, appellant complains that his attorney failed to file a discovery motion. Appellant now speculates as to the matters which could have been revealed by virtue of filing such a motion. We note that there is no support in the record for the existence of the matters which appellant maintains could have been discovered by such a motion, such as "the criminal records of the States witnesses, production of prior written statements, etc." Moreover, there is no showing as to what type of informal discovery occurred in the instant cause.

■ Appellant further contends his attorney was ineffective for failing to object to the identification testimony by Cortez. In support of this contention, appellant points to the fact that Cortez was allowed to confront him in a show-up following the arrest. The record reflects that Cortez observed appellant standing underneath a street light near the scene of the offense. Such observations would have provided an independent basis for the admissibility of

Cortez' identification testimony. See *Thomas v. State*, Tex.Cr.App., 605 S.W.2d 290. Thus, the objection which appellant contends his attorney should have made would have been without merit.

■ Appellant further contends his attorney was ineffective because he did not "adequately pursue" the cross-examination of Chambers and his closing argument was "totally insufficient." Appellant would now have this Court second-guess the strategy of his trial counsel. The fact that another attorney might have pursued a different course of action at trial will not support a finding of ineffectiveness. *Blott v. State*, Tex.Cr.App., 588 S.W.2d 588; *Howell v. State*, Tex.Cr.App., 563 S.W.2d 933.

■ Finally, appellant contends his attorney was ineffective for failing to object when the prosecutor argued his personal opinion as to appellant's guilt. We agree that the argument was improper. However, the adequacy of a counsel's assistance is based upon the totality of the attorney's representation. *Harrison v. State*, Tex.Cr. App., 552 S.W.2d 151. Thus, an isolated instance of a failure to object does not necessarily render counsel ineffective. *Callaway v. State*, Tex.Cr.App., 594 S.W.2d 440.

■ The test to be applied in determining whether counsel provided constitutionally satisfactory services is the "reasonably effective assistance" standard. *Ex Parte Morse*, Tex.Cr.App., 591 S.W.2d 904. Such a determination will be based upon the totality of counsel's representation. *Sanchez v. State*, Tex.Cr.Ap., 589 S.W.2d 422. From the record before us, we conclude that appellant was provided with reasonably effective counsel. Accordingly, appellant's third ground of error is without merit.

The judgment is affirmed.

CLINTON, Judge, concurring.

Without joining in the manner by which the Court disposes of the third ground of error, I concur in the judgment.

What concerns me is curious treatment afforded the claim of ineffective assistance of counsel. Ground of error two is overruled because "nothing is presented for review" in that defense counsel did not perfect a bill of exception or make an offer of proof—rudimentary means of protecting the record that are taught every first year law student and reiterated perennially in continuing legal education courses across our State.[1] Failure to file and present a motion for discovery is said to be of no moment—yet, many experienced criminal defense attorneys would agree with the scholarly expert's evaluation that "effective discovery practice is a must," Moses, Criminal Defense Sourcebook 175, § 7.01.[2] Although "identification of strangers is proverbially untrustworthy," *United States v. Wade*, 388 U.S. 218, 228, 87 S.Ct. 1926, 1933, 18 L.Ed.2d 1149 (1967), the majority opines that there was nothing to any objection that should have been made to identification testimony, because it divines that the witness could have observed appellant clearly enough as he stood beneath a street light. Cross examination—"beyond any doubt the greatest legal engine ever invented for the discovery of truth"[3]—is reduced to sputtering along as "strategy." And finally acknowledging a failing of counsel in not objecting when the prosecutor "argued" his personal opinion that appellant was guilty, the majority dismisses the matter as "an isolated instance."

1. See, e. g., Friloux, Protecting the Record, Vol. 2 Advanced Criminal Law Course Manual (State Bar of Texas 1978) § FF; Clinton, Protecting the Record and Appellate Advocacy, Criminal Law Update—1979 (State Bar of Texas 1979) § FF.

2. "If a trial attorney is to be *effective*, he has to know well in advance what his theory of the case will be, what the prosecution strategy is likely to be, and the facts on which the conflicting theories and strategies rest. Accordingly, *effective* discovery practice is a must." (All emphasis is mine unless otherwise indicated.)

3. Wigmore, § 1367.

Accepting the proposition that effectiveness of a criminal defense lawyer is "gauged by the totality of the representation afforded," still I would not assay performance through an analysis that first seeks to winnow out alleged failings until only one grain is "isolated," and then find it wanting—but insignificantly so. Such an approach illserves members of the bar for it avoids critical examination of particulars of performance and is neither carrot to induce nor stick to goad individual improvement in providing legal assistance to clients. Certainly, it will rarely result in relief to the complaining appellant.

The regrettable history of this very case—masked by the cryptic account in note 1 of the majority opinion—demonstrates, I believe, the point. After judgment and sentence appellant retained still another practitioner to represent him on appeal.[4] In this Court the appellate brief he filed consisted of a single sentence, to-wit: "Appellant prays that this case be reversed and remanded for a new trial."[5] As to that paper the Court remarked, "Obviously, this presents nothing for review."

As indicated in the margin, note 4, appellant sought and ultimately obtained habeas relief, but it did not become effective until after the State achieved a denial of certiorari May 12, 1980 in *Estelle v. Passmore*, 446 U.S. 937, 100 S.Ct. 2155, 64 L.Ed.2d 789, followed by a remand to the federal district court for entry of the order for an out of time appeal mandated earlier by the Fifth Circuit. In granting the relief it did, the Fifth Circuit panel originally characterized

the conduct of state appellate counsel "so maladroit as to run afoul of the Fourteenth Amendment," *Passmore*, 594 F.2d at 117. Its subsequent modification, however, substituted for that characterization the finding: "It is obvious that the representation by petitioner's retained appellate counsel was incompetent." *Passmore II*, 607 F.2d at 663.[6] But the panel divided when it came to taking the Court to task for knowing appellant "was receiving incompetent representation," yet not ordering some "remedial action," *ibid*.

The history of this case, then, reveals how it came to pass that six years later appellant at last is receiving effective representation to obtain straight forward appellate review of his claim of misrepresentation at trial. To that particular end and for the general edification of the practicing members of the bar, I would make the following dispositions of the issues mentioned in the second paragraph of this opinion.

The failure of trial counsel to make a bill of exception or make an offer of proof about when and where the witness Chambers had been in jail does not impugn his competency. The Fifth Circuit, applying Texas law, passed squarely on the action of the trial court in sustaining the objections; it held correctly, I believe, that such was not a denial of the right to confrontation since the purpose was impeachment and our law does not permit merely a showing of incarceration, but requires a final conviction. *Passmore*, supra, 594 F.2d at 117. Whatever his jail confinement, Chambers

---

4. Each one retained by him, at arraignment appellant was represented by his first lawyer; at trial by a second; on appeal by a third. On federal habeas proceedings, in forma pauperis by now, he apparently represented himself unsuccessfully in the district court, did better with a court appointed attorney from Dallas on appeal to the United States Court of Appeals for the Fifth Circuit, where he got the relief mentioned by the majority in its note 1. However, his initial success came with the opinion in *Passmore v. Estelle*, 594 F.2d 115, 118 (CA 5, 1979), the one cited by the majority being but a modification of the former, along with a specially concurring opinion by Judge Coleman.

5. Thereafter, without requesting an extension of time, he submitted a "First Amended Brief" after the deadline for filing had passed. The Court did not consider it on that account, but it did examine the record in the interest of justice and then affirmed. The brief did not suggest trial counsel had been ineffective.

6. In its own note 4 the panel again alluded to the one sentence paper filed in this Court and observed that such submission "can hardly be said to reflect the 'role of an active advocate in behalf of his clients.' *Anders v. California*, 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967)."

was not subject to impeachment on that account.[7]

Article 39.14, V.A.C.C.P., expressly rules out written statements of witnesses from the scope of discoverable material, and apparently appellant himself made none. A defense attorney who does not otherwise know whether one exists may discover the fact of a prior criminal record of any witness for the State and, if one exists, obtain a copy. See *Thomas v. State*, 482 S.W.2d 218 (Tex.Cr.App.1972). Since discovery is designed to enable a criminal defense lawyer to learn that which he does not already know of "the facts on which the conflicting theories and strategies rest," *Moses*, op. cit., supra, filing and presenting one may not be appropriate and woodenly doing so surely is not. That such a motion was not utilized does not *ipso facto* signal ineffectiveness.

*United States v. Wade*, supra, and *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) fashioned an exclusionary rule from the Sixth Amendment right to counsel. *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), on the other hand, decided the same day that conducting the "widely condemned" showup

may deny due process of law if it is "so unnecessarily suggestive and conducive to irreparable mistaken identification," *Stovall*, 388 U.S. at 302, 88 S.Ct. at 1972. That quite different determination depends on "the totality of the circumstances surrounding it," *Elliot v. State*, 444 S.W.2d 914, 918–919 (Tex.Cr.App.1969—Opinion on Rehearing).[8] And as *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) would later make clear," the admission of evidence of a showup without more does not violate due process," *id.*, U.S. at 198, 93 S.Ct. at 381. Other factors to be considered in evaluating the likelihood of misidentification include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of the certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation," *id.*, U.S. at 199–200, 93 S.Ct. at 382–383. Thus, the confrontation procedure once widely condemned has become substantially protected from successful attack.

In the case at bar identification was hardly an issue.[9] An accomplice implicated

7. Now appellant reads the questions to mean that trial counsel "obviously desired to ask Chambers about his *stay in custody* since the time of the offense," arguing that the jurors were entitled to know if Chambers had been in custody since the offense took place "in order to make an informed judgment as to the weight of his testimony." That is not my perception of where counsel was going, for he had already established that Chambers had voluntarily come to his office and sworn to a statement giving a different version of the transaction, and that Chambers was a juvenile at the time. His first question referred to Chambers being in jail "*other places* since *then*." The second attempt came much later on recross examination after the State had shown that Chambers left town after giving the statement on money loaned to him by appellant. It was thus plain to the trial court and the jury that Chambers did not "stay in custody," and I am satisfied that trial counsel was exploring the territory to show that Chambers was not only capable of lying but incapable of staying out of trouble with the law.

8. In *Cole v. State*, 474 S.W.2d 696, 698 (Tex.Cr. App.1972) the Court continued its refusal to extend *Wade* and *Gilbert* to contemporaneous

showups, justifying the one in *Cole* because an overnight delay for a lineup may have resulted in detention "of an innocent individual and the possible interruption of the search for the real criminal."

9. By a timely objection being sustained Officer Wilkerson was precluded from telling whether Cortez identified appellant and Chambers as the same two persons he had earlier pointed out to Wilkerson. For his part Cortez testified that when he saw the two male figures come out to the street under the light, "the one in front looked to be about 19 or 18 years old"— that is Chambers who at the time was sixteen—and the older one was behind and "I couldn't get too good a look at him." When the officers brought them back to Cortez, he testified that "to my knowledge" they were the same two he had seen under the street light. Asked directly if appellant as he sat there in the courtroom was one of the persons, Cortez relied, "Yes, I think he is one of them." But on cross examination he agreed he could be mistaken "since this was quite awhile ago," but "that night" he was not.

It must be remembered that Cortez never claimed to have seen the two males inside the

appellant; a police officer apprehended him near the scene after Cortez pointed toward him and Chambers. An experienced and competent trial counsel, evaluating the totality of the circumstances in context, may well have concluded that an objection would be fruitless and thus subtly bolster Cortez, would lead to a nonproductive *Martinez* hearing [10] and thereby interrupt or delay the trial to the discomforture of the jury or would simply not be worthwhile. In any event, whether to object under the circumstances is purely a judgment call on a matter of tactics.[11]

In my view, content and extent of cross examination of any witness, and certainly an accomplice witness, are never governed by considerations of "strategy" but by flow from individual technique, awareness of purpose and an abundance of caution. See *Johnson v. State*, 614 S.W.2d 148 (Tex.Cr. App., 1981) note 16, demonstrating that mindless pursuit of an adverse witness by the cross examiner may lead to a quagmire.

Finally, even though it is improper for a prosecutor to indicate his personal opinion that an accused is guilty and an objection must be made to preserve the error, still silence in the face of it may not be reprehensible. In his opening argument the prosecutor told the jury that he had tried to put together his case "like a little puzzle" by leaving Chambers as the last piece of it. He then presented a detailed discussion of the testimony of each witness, especially Chambers, and showed how coming together it all completed the puzzle. There was nothing objectionable about it; the argument was factually strong and logically effective. Appellant's counsel briefly sorted out the testimony so that if the jury were to convict "it would have to do it on the testimony" of Chambers. He recalled the inconsistent affidavit made by Chambers,

professed his inability to conceive that Chambers would tell him one story and swear to it and then come to court and tell just the opposite. It was, counsel concluded, "the jury's job to decide." The State closed in what could have been no more than three minutes, expressing agreement that credibility of Chambers was their decision, and in winding down the prosecutor said at one point, "I would say that the *evidence* is not just beyond a reasonable doubt, but almost to the point of overwhelming, that Jimmy Chambers is telling the truth." Quickly, he recalled the conversation between appellant and Chambers before Jimmy left town; then came the remark: "I feel that if the *facts* in this case don't show the defendant's guilt beyond a reasonable doubt, then I'm not sure as a prosecutor, I can put on a case that does. I think we *showed* you every—the only thing that could have ... [made] this case any stronger, would be if they had caught them actually inside the building." Concluding, the prosecutor submitted "that Franklin Passmore is guilty" and reiterated "guilty not just beyond a reasonable doubt, *I think* he's guilty beyond any doubt." This last time, however, he omitted any reference to "facts," "evidence," "testimony" or the like. He then added, "On September 18th, he went into Acme Brick, with Marvin Passmore as his lookout, and with Jimmy Chambers to help him, and he got caught. That's exactly what happened." With a reminder that on voir dire the jurors had said they would return a verdict of guilty "if I *proved* my case to you," he asked them now to do that.

Taken out of context and heard alone the reiteration is an expression of personal opinion. Almost an identical expression was held improper in *Baldwin v. State*, 499 S.W.2d 7, 9 (Tex.Cr.App.1973 as were gros-

---

fence surrounding the Acme Brick Yard, and he further disavowed telling Wilkerson that he had done so. Thus, his account is limited to seeing them outside the fence, coming out to the street under the light and, later, affirming they were the same pair he had first seen.

10. *Martinez v. State*, 437 S.W.2d 842 (Tex.Cr. App.1970).

11. "Defense counsel is to be complemented for remembering that he who often objects, only to have his objections overruled, risks alienating the jury even if he does not test the patience of the presiding judge." *Williams v. Beto*, 354 F.2d 698, 703 (CA 5, 1965).

ser ones in *Clayton v. State*, 502 S.W.2d 755, 757 (Tex.Cr.App.1973). But given the overall setting in which the remark was made, I am not prepared to fault trial counsel for not objecting.

For all these reasons I concur in the judgment.