NO. 07-07-0170-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

NOVEMBER 10, 2008

______________________________


WILLIAM DONALD FANCHER, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE


_________________________________

FROM THE 287TH DISTRICT COURT OF PARMER COUNTY;

NO. 2510.02; HON. GORDON H. GREEN, PRESIDING

_______________________________

Before QUINN, C.J., HANCOCK, J., and BOYD, S.J.



MEMORANDUM OPINION
          In two points of asserted error, appellant William Donald Fancher seeks reversal of
his conviction of felony possession of marijuana and the ensuing sentence of ten years
confinement in the Institutional Division of the Texas Department of Criminal Justice. In
those points, appellant contends: 1) the evidence is insufficient to corroborate the
testimony of Vernon Puckett, an accomplice as a matter of law; and 2) the evidence is
factually insufficient to support his conviction. Disagreeing that reversal is required, we
overrule appellant’s points and affirm the judgment of the trial court.
Factual Background
          On October 16, 2001, Parmer County Sheriff Randy Gerries and his deputies
discovered “hundreds” of marijuana plants growing among corn on a portion of a field
belonging to Ronnie Puckett (Ronnie). Many of the marijuana plants were tied to the corn
stalks as support to keep them straight. Ronnie’s farm consisted of approximately one-half
section of land and the sheriff estimated that the size of the field upon which the corn and
marijuana was located was about ten acres. The surface consisted chiefly of cultivated
fields lying within two contiguous center-pivot irrigation circles. The farm also produced
pumpkins and ornamental gourds that were packaged for resale in a vegetable processing
area located on the farm. On the day of his visit to the site, the sheriff saw several farm
workers packaging products in a shed located on the premises. 
          Behind the irrigation circles near the southern boundary of the farm was a barn and
a mobile home which was occupied by Vernon Puckett (Vernon) who was Ronnie’s father. 
 Vernon’s pickup was located on the property and was found to have small marijuana
plants and stems in its bed. The pickup also contained cords in the bed that were
consistent with the type of cords that were used in the field to tie up the marijuana plants. 
It additionally contained three sets of cutters which the sheriff concluded were used to cut
the marijuana plants in the field.
          A search of the barn found what appeared to be a marijuana processing area in its
south area. The door to the barn was painted black and prevented anyone from seeing
inside it. There were wires strung across the processing area that looked like a clothes
line. Under the lines was a tarp and a bucket. The tarp had marijuana stalks and leaves
on it. The bucket contained marijuana stems with the leaves stripped off. Marijuana
leaves were scattered all over the concrete floor in the processing area, and two small
bags were found that contained marijuana stems and leaves.
          An operating refrigerator was located in the processing area which was found to
contain food, drinks, and bottles of prescription blood pressure and cholesterol pills bearing
the name of appellant. The officers also discovered a basement in the south portion of the
barn which was found to contain marijuana leaves, scissors, and bagging and packaging
materials. There were lights in the basement of the type that might be used to grow
marijuana plants. Additionally, outside the barn was located a non-operable refrigerator
which was found to contain marijuana seeds and residue.
          At trial, the sheriff testified that Vernon had told him that a marijuana harvest had
been done in September. He also averred that he had supervised the destruction of the
growing marijuana plants by Ronnie. A portion of the marijuana was weighed and
analyzed at the Texas Department of Public Safety’s crime laboratory. That analysis
confirmed that the substance submitted was marijuana in an aggregate weight of 66.04
pounds.
          Because the seized prescription bottles bore appellant’s name, the sheriff instituted
a search for him. In the course of that search, it was ascertained that appellant had been
living in Clovis between May and November 2001, and the investigation continued there. 
Terry Lynn Cox, a former neighbor of appellant’s in Clovis told the sheriff that shortly before
7:00 a.m. on November 10, 2001, appellant approached her and, without cost to her,
offered to transfer the contract for deed on his home in Clovis. Cox agreed, the
assignment was consummated on November 14 and recorded, and appellant left for
California. Ms. Cox averred that appellant had left furniture, a refrigerator, and some food
in the house. The sheriff obtained permission to search the Clovis house in the course of
which he discovered marijuana residue in the carpet. Appellant was arrested in California
and returned to Texas to stand trial. 
          As a result of a plea bargain with the State, Vernon pled guilty and received a ten
year probated sentence because of his activities on Ronnie’s farm. Vernon recited that he
and appellant became acquainted when both of them were working in California. They
stayed in contact and, in the spring of 2001, he said appellant and his son came to Texas
because “we was going to plant some marijuana” on Ronnie’s farm. Vernon averred that
he, appellant, and appellant’s son planted some 300 marijuana plants on the farm which
were harvested by appellant and appellant’s wife and son. As the plants were harvested,
they were carried back to Ronnie’s farm in a pickup Vernon owned. After the plants were
delivered to the barn, he said, appellant, his son, and his wife would deliver them to
“whoever was going to travel it further.” Vernon estimated that appellant and the others
spent “about six weeks, five weeks, maybe” on the farm. Vernon said that appellant had
paid him “ten or twelve thousand” dollars as his part of the profit from the sale.
          Appellant chose to testify at trial. He also said that he and Vernon had gotten
acquainted when both of them were working in California. After Vernon moved back to
Texas, he said, he bought a “little place” in Arkansas. As he would go back and forth, he
would stop to see Vernon and would sometimes spend the night although he denied they
ever discussed marijuana. In 2001, he said he bought the Clovis house because he
wanted to get back where there wouldn’t be as many drugs as there were in California. In
doing so, he said he borrowed about three thousand dollars from Vernon to pay for the
house because he only had “Social Security and SSI.” He said he had a bad back and
wasn’t able to lift but he had worked some for Ronnie on the farm driving a tractor and
“helped him in the Indian corn and gourds and pumpkins.” He worked five and sometimes
seven days a week for Ronnie, but he denied that he knew anything about the marijuana
project.
          Appellant admitted that he had put his blood pressure and cholesterol pills in the
refrigerator located on Ronnie’s farm, and he admitted that one day as he went to get
some pills, he saw the marijuana located in the barn, took his pills, left the barn, and never
went back in. He averred that when he did work on the farm he used to go home about
noon and whoever brought in the marijuana must have brought it in the evening as he had
no knowledge of it. He said he never used marijuana, although he thought his boys might
have done so.
          Appellant specifically denied that he had ever planted any marijuana and could not
have done so because “[he] was seventy-six years old,” [his] back has been bad for years,”
and he “absolutely did not plant one seed.” Appellant admitted that he had been arrested
in California but vacillated about the nature and result of that arrest although he had ended
up serving eight months and 26 days in a county jail. The jury received evidence that he
had been convicted for marijuana possession and cultivation for which he received a
probated sentence. Appellant said he sold the Clovis house because his boys had gone
back to California. He left the personal property and furniture in the Clovis house because
it “wasn’t worth hauling back . . . .”
 
Discussion
          Article 38.14 of the Code of Criminal Procedure provides “[a] conviction cannot be
had upon the testimony of an accomplice unless corroborated by other evidence tending
to connect the defendant with the offense committed; and the corroboration is not sufficient
if it merely shows the commission of the offense.” Tex. Code Crim. Proc. Ann. art. 38.14
(Vernon 2005). An accomplice witness is an accomplice as a matter of law if he implicates
himself in an offense. Gill v. State, 873 S.W.2d 45, 47 n.3 (Tex. Crim. App. 1994). In this
case, because Vernon admitted participating in the charged offense, he is an accomplice
as a matter of law. Thus, in order to give sufficient evidentiary weight to his testimony, the
record must contain other evidence tending to connect appellant to the charged offense.
          The evidentiary strength of corroborative evidence is determined by eliminating from
consideration the testimony of the accomplice witness and examining the testimony of
other witnesses to determine if sufficient other evidence exists that tends to connect the
defendant to the commission of the alleged crime. Hernandez v. State, 939 S.W.2d 173,
176 (Tex. Crim. App. 1997).
           It is true that the mere presence of a defendant at the scene of the crime, without
more, is not sufficient to corroborate accomplice testimony. Cox v. State, 830 S.W.2d 609,
611 (Tex. Crim. App. 1992). Even so, such evidence, when coupled with other suspicious
circumstances, may sufficiently tend to connect an accused to the crime so as to furnish
sufficient corroboration to support a conviction. Brown v. State, 672 S.W.2d 487, 489 (Tex.
Crim. App. 1984). It has long been true that apparently insignificant circumstances may
provide sufficient corroboration. Holmes v. State, 70 Tex. Crim. 423, 157 S.W. 487, 493
(1913). Evidence of flight, when coupled with the presence of a defendant at the crime
scene has been held sufficient corroborating evidence. Passmore v. State, 617 S.W.2d
682, 684-85 (Tex. Crim. App. 1981), overruled on other grounds by Reed v. State, 744
S.W.2d 112 (Tex. Crim. App. 1988). Moreover, although it may be considered along with
other evidence tending to connect an accused to a crime, evidence of motive or opportunity
to commit a crime by itself is not sufficient to corroborate accomplice testimony. Reed v.
State, 744 S.W.2d at 127.
          In this case, aside from Vernon’s testimony, there was evidence that appellant had
been convicted in California of the offenses of cultivating and possessing marijuana and
destruction of evidence. It was undisputed that appellant had worked on Ronnie’s farm at
least through October 18, 2001. The record also shows that the marijuana on Ronnie’s
farm was harvested in September 2001 and that during that same month, appellant had
placed his prescription bottles in the refrigerator located in the barn in which the processing
of the marijuana was taking place. Additionally, appellant testified specifically that when
“they brought that first load of marijuana in there,” he removed his medications from the
barn refrigerator. He also admitted that he continued to work on the farm for a month after
he had discovered the marijuana in the barn. 
          It is axiomatic that the jury is the exclusive judge of the credibility of witnesses and
of the weight to be given their testimony. Wyatt v. State, 23 S.W.3d 18, 30 (Tex. Crim.
App. 2000). Likewise, reconciliation of conflicts in the evidence is within the sole province
of the jury and it may choose to believe some testimony and disbelieve other testimony. 
Id. In this case, the jury chose to accept the State’s testimony. The evidence we have
outlined is sufficient to corroborate the accomplice testimony and to justify the jury’s
verdict. Appellant’s points of error must be, and are hereby, overruled.
          Accordingly, the judgment of the trial court is affirmed. 
 
                                                                           John T. Boyd
                                                                          Senior Justice
 
Do not publish.