NO. 07-07-0170-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

NOVEMBER 10, 2008

_____

WILLIAM DONALD FANCHER, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 287TH DISTRICT COURT OF PARMER COUNTY;

NO. 2510.02; HON. GORDON H. GREEN, PRESIDING

_____

Before QUINN, C.J., HANCOCK, J., and BOYD, S.J.[1]

**MEMORANDUM OPINION**

In two points of asserted error, appellant William Donald Fancher seeks reversal of

his conviction of felony possession of marijuana and the ensuing sentence of ten years

confinement in the Institutional Division of the Texas Department of Criminal Justice. In

those points, appellant contends: 1) the evidence is insufficient to corroborate the

testimony of Vernon Puckett, an accomplice as a matter of law; and 2) the evidence is

---

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon 2005).

factually insufficient to support his conviction. Disagreeing that reversal is required, we overrule appellant's points and affirm the judgment of the trial court.

Factual Background

On October 16, 2001, Parmer County Sheriff Randy Gerries and his deputies discovered "hundreds" of marijuana plants growing among corn on a portion of a field belonging to Ronnie Puckett (Ronnie). Many of the marijuana plants were tied to the corn stalks as support to keep them straight. Ronnie's farm consisted of approximately one-half section of land and the sheriff estimated that the size of the field upon which the corn and marijuana was located was about ten acres. The surface consisted chiefly of cultivated fields lying within two contiguous center-pivot irrigation circles. The farm also produced pumpkins and ornamental gourds that were packaged for resale in a vegetable processing area located on the farm. On the day of his visit to the site, the sheriff saw several farm workers packaging products in a shed located on the premises.

Behind the irrigation circles near the southern boundary of the farm was a barn and a mobile home which was occupied by Vernon Puckett (Vernon) who was Ronnie's father. Vernon's pickup was located on the property and was found to have small marijuana plants and stems in its bed. The pickup also contained cords in the bed that were consistent with the type of cords that were used in the field to tie up the marijuana plants. It additionally contained three sets of cutters which the sheriff concluded were used to cut the marijuana plants in the field.

A search of the barn found what appeared to be a marijuana processing area in its south area. The door to the barn was painted black and prevented anyone from seeing inside it. There were wires strung across the processing area that looked like a clothes

2

line. Under the lines was a tarp and a bucket. The tarp had marijuana stalks and leaves on it. The bucket contained marijuana stems with the leaves stripped off. Marijuana leaves were scattered all over the concrete floor in the processing area, and two small bags were found that contained marijuana stems and leaves.

An operating refrigerator was located in the processing area which was found to contain food, drinks, and bottles of prescription blood pressure and cholesterol pills bearing the name of appellant. The officers also discovered a basement in the south portion of the barn which was found to contain marijuana leaves, scissors, and bagging and packaging materials. There were lights in the basement of the type that might be used to grow marijuana plants. Additionally, outside the barn was located a non-operable refrigerator which was found to contain marijuana seeds and residue.

At trial, the sheriff testified that Vernon had told him that a marijuana harvest had been done in September. He also averred that he had supervised the destruction of the growing marijuana plants by Ronnie. A portion of the marijuana was weighed and analyzed at the Texas Department of Public Safety's crime laboratory. That analysis confirmed that the substance submitted was marijuana in an aggregate weight of 66.04 pounds.

Because the seized prescription bottles bore appellant's name, the sheriff instituted a search for him. In the course of that search, it was ascertained that appellant had been living in Clovis between May and November 2001, and the investigation continued there. Terry Lynn Cox, a former neighbor of appellant's in Clovis told the sheriff that shortly before 7:00 a.m. on November 10, 2001, appellant approached her and, without cost to her, offered to transfer the contract for deed on his home in Clovis. Cox agreed, the

3

assignment was consummated on November 14 and recorded, and appellant left for California. Ms. Cox averred that appellant had left furniture, a refrigerator, and some food in the house. The sheriff obtained permission to search the Clovis house in the course of which he discovered marijuana residue in the carpet. Appellant was arrested in California and returned to Texas to stand trial.

As a result of a plea bargain with the State, Vernon pled guilty and received a ten year probated sentence because of his activities on Ronnie's farm. Vernon recited that he and appellant became acquainted when both of them were working in California. They stayed in contact and, in the spring of 2001, he said appellant and his son came to Texas because "we was going to plant some marijuana" on Ronnie's farm. Vernon averred that he, appellant, and appellant's son planted some 300 marijuana plants on the farm which were harvested by appellant and appellant's wife and son. As the plants were harvested, they were carried back to Ronnie's farm in a pickup Vernon owned. After the plants were delivered to the barn, he said, appellant, his son, and his wife would deliver them to "whoever was going to travel it further." Vernon estimated that appellant and the others spent "about six weeks, five weeks, maybe" on the farm. Vernon said that appellant had paid him "ten or twelve thousand" dollars as his part of the profit from the sale.

Appellant chose to testify at trial. He also said that he and Vernon had gotten acquainted when both of them were working in California. After Vernon moved back to Texas, he said, he bought a "little place" in Arkansas. As he would go back and forth, he would stop to see Vernon and would sometimes spend the night although he denied they ever discussed marijuana. In 2001, he said he bought the Clovis house because he wanted to get back where there wouldn't be as many drugs as there were in California. In

4

doing so, he said he borrowed about three thousand dollars from Vernon to pay for the house because he only had "Social Security and SSI." He said he had a bad back and wasn't able to lift but he had worked some for Ronnie on the farm driving a tractor and "helped him in the Indian corn and gourds and pumpkins." He worked five and sometimes seven days a week for Ronnie, but he denied that he knew anything about the marijuana project.

Appellant admitted that he had put his blood pressure and cholesterol pills in the refrigerator located on Ronnie's farm, and he admitted that one day as he went to get some pills, he saw the marijuana located in the barn, took his pills, left the barn, and never went back in. He averred that when he did work on the farm he used to go home about noon and whoever brought in the marijuana must have brought it in the evening as he had no knowledge of it. He said he never used marijuana, although he thought his boys might have done so.

Appellant specifically denied that he had ever planted any marijuana and could not have done so because "[he] was seventy-six years old," [his] back has been bad for years," and he "absolutely did not plant one seed." Appellant admitted that he had been arrested in California but vacillated about the nature and result of that arrest although he had ended up serving eight months and 26 days in a county jail. The jury received evidence that he had been convicted for marijuana possession and cultivation for which he received a probated sentence. Appellant said he sold the Clovis house because his boys had gone back to California. He left the personal property and furniture in the Clovis house because it "wasn't worth hauling back . . . ."

Discussion

Article 38.14 of the Code of Criminal Procedure provides "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005). An accomplice witness is an accomplice as a matter of law if he implicates himself in an offense. *Gill v. State*, 873 S.W.2d 45, 47 n.3 (Tex. Crim. App. 1994). In this case, because Vernon admitted participating in the charged offense, he is an accomplice as a matter of law. Thus, in order to give sufficient evidentiary weight to his testimony, the record must contain other evidence tending to connect appellant to the charged offense.

The evidentiary strength of corroborative evidence is determined by eliminating from consideration the testimony of the accomplice witness and examining the testimony of other witnesses to determine if sufficient other evidence exists that tends to connect the defendant to the commission of the alleged crime. *Hernandez v. State*, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997).

It is true that the mere presence of a defendant at the scene of the crime, without more, is not sufficient to corroborate accomplice testimony. *Cox v. State*, 830 S.W.2d 609, 611 (Tex. Crim. App. 1992). Even so, such evidence, when coupled with other suspicious circumstances, may sufficiently tend to connect an accused to the crime so as to furnish sufficient corroboration to support a conviction. *Brown v. State*, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984). It has long been true that apparently insignificant circumstances may provide sufficient corroboration. *Holmes v. State*, 70 Tex. Crim. 423, 157 S.W. 487, 493 (1913). Evidence of flight, when coupled with the presence of a defendant at the crime

6

scene has been held sufficient corroborating evidence. *Passmore v. State*, 617 S.W.2d 682, 684-85 (Tex. Crim. App. 1981), *overruled on other grounds by Reed v. State*, 744 S.W.2d 112 (Tex. Crim. App. 1988). Moreover, although it may be considered along with other evidence tending to connect an accused to a crime, evidence of motive or opportunity to commit a crime by itself is not sufficient to corroborate accomplice testimony. *Reed v. State,* 744 S.W.2d at 127.

In this case, aside from Vernon's testimony, there was evidence that appellant had been convicted in California of the offenses of cultivating and possessing marijuana and destruction of evidence. It was undisputed that appellant had worked on Ronnie's farm at least through October 18, 2001. The record also shows that the marijuana on Ronnie's farm was harvested in September 2001 and that during that same month, appellant had placed his prescription bottles in the refrigerator located in the barn in which the processing of the marijuana was taking place. Additionally, appellant testified specifically that when "they brought that first load of marijuana in there," he removed his medications from the barn refrigerator. He also admitted that he continued to work on the farm for a month after he had discovered the marijuana in the barn.

It is axiomatic that the jury is the exclusive judge of the credibility of witnesses and of the weight to be given their testimony. *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000). Likewise, reconciliation of conflicts in the evidence is within the sole province of the jury and it may choose to believe some testimony and disbelieve other testimony. *Id*. In this case, the jury chose to accept the State's testimony. The evidence we have outlined is sufficient to corroborate the accomplice testimony and to justify the jury's verdict. Appellant's points of error must be, and are hereby, overruled.

7

Accordingly, the judgment of the trial court is affirmed.

John T. Boyd
Senior Justice

Do not publish.