**Tommy DEAS et al., Appellants,**

**v.**

**The STATE of Texas, Appellee.**

**No. 50794.**

Court of Criminal Appeals of Texas.

Jan. 21, 1976.

Rehearing Denied Feb. 11, 1976.

Selden B. Hale, Amarillo, for appellants.

Andrew J. Shuval, Dist. Atty., Hereford, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

MORRISON, Judge.

The offense is second degree felony theft (cattle); the punishment as to each appellant, five years.

Sufficiency of the evidence to support the conviction is challenged.

It was established by non-accomplice testimony that:

1. The three appellants were brothers.

2. One hundred and two branded cattle were stolen from the Texsun Feed Yards in Hereford on August 2, 1974.

3. One hundred and two of the stolen cattle were recovered from Nichols Truck Pen in Houston on August 6.[1]

The non-accomplice testimony is summarized as follows.

Phillip Farr, Assistant Manager of Texsun Feed Yards in Hereford, testified that on Friday, August 2, he saw appellants Tommy Deas and Jerry Deas at a steak house in Hereford with Cliff Skiles. He also testified that the feed lot had no night watchman and, as far as he remembered, he locked the outer gates at the close of business on August 2. He further stated that he did not miss any cattle until his foreman brought the matter to his attention on Sunday afternoon and that all concerned then began to try to account for how many cattle had been taken and were ultimately able to ascertain that the number was one hundred and two.

---

1. The Texsun Feed Yards handled an average of 6,000 cattle at a time. The cattle belonged to different owners. By checking brands, the feed lot employees were able to establish that one hundred and two cattle were missing.

Cliff Skiles, who along with Ken Gill owned a 40-foot cattle trailer and truck-tractor, said that he met Tommy and Jerry Deas at the steak house in Hereford on August 2. They discussed using his trailer later in the day.

Ken Gill stated that Jerry Deas got the keys to his truck-tractor on August 2, and that Tommy Deas returned the keys the next day.

Betty Gresham, bookkeeper at a truck stop in Hereford, said that Tommy Deas signed a ticket for 50 gallons of gasoline on August 2, and rode off in Gill's truck-tractor.

Michael Bradford, owner of Bradford Trucking Company in Hereford, testified that on August 3 he received a call from one of the appellants for two "pots"[2] and drivers to pick up some cattle at Reece Lawson's cattle pens six miles north of Hereford. In compliance with this call, he went to these pens with two "pots" and drivers, where he met Tommy Deas and Larry Noland, a feed lot operator in Summerfield. Tommy Deas gave instructions to haul the cattle to Houston.

Bob Sims, manager of Texsun Feed Yards, testified that on Sunday, August 4, he received a call from his head cowboy reporting that some cattle were missing. The following morning, after marshalling his help, he ascertained that the missing number amounted to one hundred and two head. He immediately sent notices of the numbers and brands of the missing cattle. On Tuesday, August 6, he received a call and went to Nichols Truck Pen in Houston, where he identified the one hundred and two missing cattle by brands.

Kenneth Hudson, head cowboy at Texsun Feed Yards, testified that on Saturday, August 3, he found the gates to the individual pens open and the cattle mingling out in the yard. He participated in the head count on Monday and assisted in identifying the missing cattle found at Nichols in Houston.

Robert Holmes, truck driver for Bradford Trucking Company, said that he helped load the cattle at Reece Lawson's pens on August 3 and drove to Houston, where he met Tommy Deas and Gary Godwin and unloaded the cattle upon Tommy Deas' orders.

Johnny Beltran, an employee of Texsun Feed Yards, testified that on August 2 his superior Henry Rayburn, had the keys to the individual pens at the feed lot. That evening he went to Rayburn's house, where he saw Tommy Deas and another man drinking beer with Rayburn.

Jack Ceasar, a cattle buyer in the Wharton area, testified that he saw Tommy Deas and Ronny Mack Deas at his club on Sunday, August 4, and they asked him to sell some cattle in Houston for them. On Tuesday, August 6, he called Ronny Mack Deas and told him that he had set up a deal to sell the cattle.

Milton Freedman, wholesale meat dealer and packer, testified that on August 4 he received a call from Jack Ceasar about some cattle at Nichols Truck Pen. He did nothing further in the transaction.

The accomplice witnesses gave the following testimony.

Larry Noland testified that he met Tommy Deas and Jerry Deas at a club in Amarillo a week prior to August 2, and they discussed stealing some cattle from Texsun Feed Yards. During the conversation, the fact that no night watchman was employed at the feed lot was discussed. He met Tommy Deas, Jerry Deas and Cliff Skiles at a steak house in Hereford on August 2. Tommy and Jerry told him that they had a truck and were going to Texsun Feed Yards that night to steal cattle. They further told him that their brother, Ronny Mack Deas, would handle the sale of the cattle once they got to Houston. At about 10:00 p. m. that night Tommy, Jerry, Gary Godwin and he met at the Texsun Feed Yards and started loading cattle. Three truck loads and one pickup trailer load of cattle

2. "Pots" were shown to be a double decker cattle truck-tractor and trailer.

were carried that night before 3:00 a. m. to Reece Lawson's pens.

Noland further testified that the next morning he and Tommy Deas returned the truck to Skiles and went to Reece Lawson's pens, where they loaded the cattle into the Bradford trucks. Noland did not accompany the cattle to Houston. On Monday, August 4, he learned the cattle theft had been discovered. He was unable to contact Tommy Deas in Houston, but spoke to Jerry Deas in Amarillo. Later that day he was approached by law enforcement officers and ultimately cooperated with them.

Gary Godwin, who was working for Larry Noland and living in his house, testified that on August 2 Tommy Deas, Jerry Deas and Noland asked him if he wanted to help them steal some cattle from Texsun Feeds Yards, and he agreed. Later that night they went to the feed lot and hauled the cattle to Reece Lawson's pens. The next day he and Tommy returned the truck keys to Ken Gill and went to Reece Lawson's pens to help load the cattle into the Bradford trucks. He then drove Tommy Deas to Houston and enroute Tommy told him that Ronny Mack Deas would take care of the sale of the cattle in Houston. Upon their arrival, they unloaded the cattle at Nichols Truck Pen. Later he accompanied Tommy Deas and Ronny Mack Deas to see Jack Ceasar, but did not hear the discussion.

Tommy Deas was the only appellant to testify in his own behalf. He admitted borrowing the truck and trailer from Skiles and Gill, but said that at 2:00 a. m. on August 3 Larry Noland called him and asked his help in disposing of two loads of cattle. He agreed to do so for a commission, and thereafter arranged for the trucks from Bradford and accompanied Gary Godwin to Houston to make the sale. He denied any conversation with Ceasar. He stated that later he and Ronny Mack learned that the cattle had been stolen. They flew to Amarillo, met Jerry and all three of them drove to Hereford, where they surrendered to the sheriff.

The test of sufficiency of corroboration of the testimony of an accomplice witness is to eliminate the evidence of the accomplice from consideration and then examine evidence of other witnesses to ascertain if there be inculpatory evidence or evidence of incriminating character which tends to connect the accused with the commission of the offense. *Colunga v. State*, Tex.Cr.App., 481 S.W.2d 866; *Cherb v. State*, Tex.Cr.App., 472 S.W.2d 273. Clearly there is sufficient evidence to corroborate the accomplice witnesses' testimony as to the appellant Tommy Deas. *Dagley v. State*, 171 Tex.Cr.R. 465, 351 S.W.2d 229.

There is evidence that Jerry Deas negotiated for the use of the cattle truck in Hereford and picked up the truck on August 2. Proof that an accused was at or near the scene of a crime at or near the time of its commission may tend to connect the accused with the commission of the crime so as to furnish sufficient corroboration to support a conviction. *Clary v. State*, Tex.Cr.App., 491 S.W.2d 900. Jerry Deas secured the truck used in the commission of the crime and was seen in the company of his brother, Tommy, and the accomplice Larry Noland. We hold this to be sufficient corroboration to support his conviction.

As to Ronny Mack Deas, the only evidence tending to connect him with the offense was his conversation with Jack Ceasar about finding a buyer for some cattle in Houston. There is a complete absence of any corroboration of the fact that he had knowledge that the cattle which he attempted to sell were stolen. This is an essential element for his conviction. Because of the absence of such corroboration, the evidence is insufficient to support the conviction of Ronny Mack Deas. *O'Donald v. State*, Tex.Cr.App., 492 S.W.2d 584; *Windham v. State*, Tex.Cr.App., 479 S.W.2d 319.

Accordingly, the convictions for Tommy Deas and Jerry Deas are affirmed. The judgment of conviction against Ronny

Mack Deas is reversed and the cause remanded.