Angel BADILLO, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–97–00129–CR.

Court of Appeals of Texas,
San Antonio.

Feb. 18, 1998.

Rehearing Overruled March 12, 1998.

Eddie De La Garza, Edinburg, for Appellant.

Joe Frank Garza, Dist. Atty., Alice, Charles L. Barrera, Armando Barrera, Barrera & Barrera Law Firm, Alice, for Appellee.

Before HARDBERGER, C.J., and RICKHOFF and DUNCAN, JJ.

## OPINION

HARDBERGER, Chief Justice.

### INTRODUCTION

This is an appeal from a murder conviction. Appellant, Angel Badillo, was tried by a jury and convicted of murder for the 1991 shooting death of convenience store clerk Anthony Peña. The trial judge sentenced Badillo to life imprisonment and fined him $10,-000.

### FACTS

In May 1991, Peña's body was found behind the counter of Brush Country Store in Brooks County, where Peña worked as a part-time clerk. He had been shot three times in the head. Three weeks later, as a result of information provided by Melva Villarreal, police pulled over Badillo's red vehicle and took Badillo in for questioning. In February 1992, Badillo and six others (including Villarreal) were arrested and indicted for capital murder. In 1993, a grand jury replaced that charge with indictments of murder. In May 1993, Badillo was released on bail, after serving 400 days in jail.

Also in 1993, a new prosecuting attorney, Joe Frank Garza, took office in Brooks County. But it was not until 1995 (three years after Badillo's arrest) that Garza, who testified that he had known about a potential conflict in the case since the time he took office, appointed a special prosecutor, Armando Barerra, to handle the case.

In October 1996, the case was moved to Jim Wells County on a change of venue. In November, a pretrial hearing was held to hear, among other things, motions for dismissal from the various defendants in the case, on the basis that the defendants had been denied their right to speedy trials. U.S. CONST. amend. VI. These motions were denied. In December 1996, four years and ten months after his arrest, Badillo was prosecuted for Peña's murder.

The evidence presented against Badillo included the testimony of three women who had also been indicted for the murder. Each was granted immunity in exchange for her testimony. Adela Martha Johnson, Melva Villarreal, and Guadalupe Lozano Ramirez testified at trial that they had been with Badillo at the convenience store on the night of the murder, and that Badillo had stated that he planned to go into the store and shoot Peña. Two of the women admitted they went into the store with Badillo and witnessed the shooting. They stated that they assisted Badillo and two other men in looting the store for beer, soda, candy, and chips after the shooting. A fourth accomplice, Miguel Ramirez, also testified. However, in spite of certain prosecution for perjury, Ramirez refused to implicate Badillo in

the murder.[1] The State offered impeachment evidence that Ramirez had made contrary statements prior to trial.

In addition to this testimony, the State offered the testimony of the coroner, forensic experts, witnesses who had seen Badillo near the Brush Country Store in the weeks proceeding the murder, and the testimony of Dennis Broadwater, who placed Badillo in front of the Brush Country Store sometime in the late afternoon on the day of the murder. In his charge to the jury, the trial judge instructed the jurors that if they found that the three women who testified against Badillo had been accomplices to the crime, then the jury could not convict Badillo unless something in this additional evidence tended to link Badillo to the crime. The jury found Badillo guilty of murder.

In seven points of error, Badillo claims that (1) the trial court erred in denying his motion for new trial because the special prosecutors did not file their oaths of office until after trial and sentencing; (2) the trial court erred in denying his motion for continuance to investigate exculpatory evidence allegedly suppressed by the State; (3) the trial court erred in that it did not have jurisdiction over him, because he was not indicted for murder within the statutory time frame; (4) the trial court erred in denying his motion for an instructed verdict based on uncorroborated accomplice testimony; (5) the trial court erred in denying his first requested jury instruction that the witnesses were accomplices as a matter of law; (6) the trial court erred in denying his motion to dismiss for lack of a speedy trial; (7) the trial court

erred in that the evidence was insufficient to convict him of murder.

The trial judge was in error when he charged the jurors that they could decide, as a matter of fact, whether the four witnesses who testified against Badillo were accomplices. They were accomplices as a matter of law. We further find that because there was insufficient evidence to support a conviction, the trial court erred in denying Badillo's motion for an instructed verdict. Because a finding of insufficient evidence mandates an acquittal, *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Clewis v. State,* 922 S.W.2d 126, 132 (Tex.Crim.App. 1996), we do not address the remaining points of error.[2] *See* TEX. R.APP. P. 47.1 (appellate court must address all issues necessary to final disposition of case).

## ACCOMPLICE TESTIMONY

Badillo alleges that the trial court erred in not instructing the jury that the three female witnesses who testified that Badillo had killed Peña were accomplices as a matter of law. Badillo also claims that the trial judge erred in denying his motion for an instructed verdict, which was based on the lack of evidence corroborating the accomplice testimony.

### Standard of Review

 An appeal from a denial of a request for an instructed verdict is really a challenge to the sufficiency of the evidence. *Cook v. State,* 858 S.W.2d 467, 470 (Tex.Crim. App.1993). In reviewing this claim, this court must review the evidence in a light

---

1. Ramirez was subsequently charged with perjury.

2. However, we note our serious concern about the more than four-year delay in bringing this case to trial. Why the case remained untouched for the year prior to Mr. Garza's election and for the first two years of Mr. Garza's term as prosecuting attorney is unexplained in the record. It would, indeed, be difficult to explain, given that apparently no investigatory work was done during this period. The uncontroverted testimony was that evidence sat in boxes during this period, not even sent away for laboratory analysis until the special prosecutors took over. Additionally, some evidence, including perhaps 200 photographs, was lost.

Although a trial judge found that the delay was due, in part, to Badillo's attorney's repeated requests for continuances, we note that only 150 days of the delay can be explained in this way. In light of the fact that no special prosecutor had been appointed at the time the continuances were granted (thus, the State could not possibly have gone to trial) and in light of the fact that, taking these days into account, there remains a four-year-and-five-month delay, we do not believe these continuances excuse the State's handling of the case.

While we do not find that there was a violation of the defendant's right to a speedy trial because we do not have to, we think that probably there was.

most favorable to the verdict and determine if any rational trier of fact could have found from the evidence every element of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see also Clewis,* 922 S.W.2d at 132 (if evidence fails the *Jackson* standard, it is legally insufficient, and the case should never have been submitted to the jury). The sufficiency of the evidence is measured against the elements of the offense as defined by a "hypothetically correct jury charge for the case." *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App.1997). The correct charge here was that the three female witnesses and Ramirez were accomplices as a matter of law.

█ To test the sufficiency of corroborating evidence, we eliminate from consideration the accomplice testimony and examine the other evidence to determine if it tends to connect the defendant with the commission of the offense. *Edwards v. State,* 427 S.W.2d 629, 632 (Tex.Crim.App.1968). In applying this test, each case must be considered on its own facts and circumstances. *Reed v. State,* 744 S.W.2d 112, 126 (Tex.Crim.App.1988). The facts and testimony are viewed as a whole. The corroborating testimony must only "tend" to connect the defendant to the offense. *Cox v. State,* 830 S.W.2d 609, 611 (Tex.Crim.App.1992). The accomplice may state any number of facts that are corroborated by non-accomplices, but if the facts do not tend to connect *the accused to the crime, the accomplice testimony may not be considered. Paulus v. State,* 633 S.W.2d 827, 844 (Tex.Crim.App.1981).

### Accomplices as a Matter of Law

█ An accomplice is an individual who participated with the accused before, during, or after the commission of the crime for which the defendant is on trial. *De La Rosa v. State,* 919 S.W.2d 791, 793–4 (Tex.App.— San Antonio 1996, pet. ref'd). If a witness has been indicted for the crime, he or she is an accomplice as a matter of law. *Goff v. State,* 931 S.W.2d 537, 542 n. 2 (Tex.Crim. App.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1438, 137 L.Ed.2d 545 (1997); *De La Rosa,* 919 S.W.2d at 795.

█ In Texas, a conviction cannot be had on the basis of accomplice testimony unless that testimony is corroborated by other evidence that tends to connect the defendant to the offense committed. TEX.CODE CRIM. PROC. ANN. art. 38.14 (Vernon 1979). This rule is legislative, not constitutional, and it is designed to ensure that the jury does not consider accomplice testimony unless the jury finds both that the accomplice is telling the truth and that other evidence corroborates the accomplice witness. *Tran v. State,* 870 S.W.2d 654, 658 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd). One accomplice witness's testimony may not corroborate the testimony of another accomplice witness. *Chapman v. State,* 470 S.W.2d 656, 660 (Tex. Crim.App.1971).

█ The women who testified against Badillo, and Miguel Ramirez, were accomplices as a matter of law. The court's instruction that the jury was entitled to decide for itself whether the witnesses were accomplices was erroneous.[3] The State maintains that whether the witnesses were accomplices should have been a question for the jury, because the women "should never have been indicted for murder since they did absolutely nothing to aid encourage or assist [sic] the Appellant in committing the murder." Assuming the record bore this out (which it does not clearly do), this is simply not the law in Texas. The witnesses were indicted with Badillo and testified in exchange for immunity from prosecution. Thus, Badillo's conviction cannot stand unless there is sufficient evidence corroborating their testimony.

█ The erroneous instruction alone would requires a reversal and remand of this case for retrial if this court found that the

---

3. When it is clear from the evidence that a witness was not an accomplice, no charge need be given to the jury on that issue. *Flores v. State,* 920 S.W.2d 347, 351 (Tex.App.—San Antonio 1996, pet. dism'd, 940 S.W.2d 660 (Tex.Crim. App.1996)). If there is a conflict in the evidence on the issue, the court should charge the jury. *Id.* If the witness is an accomplice as a matter of law, the charge is mandatory. *Riggs v. State,* 744 S.W.2d 140, 142 (Tex.App.—Houston [1st Dist] 1986, pet. dism'd, 745 S.W.2d 1 (Tex.Crim.App. 1988)).

jury could have used the accomplices' testimony to convict. *See Tran,* 870 S.W.2d at 658 (when judge gives jury instruction on accomplice as a matter of fact when instruction should have been on accomplices as a matter of law, error is harmful if jury could have used accomplice testimony to convict). However, the State's case suffers from a more serious defect. The evidence, apart from the accomplice testimony, is insufficient and therefore cannot support the jury's verdict. Where the reviewing court finds that there was insufficient evidence, apart from the accomplice testimony, to tend to connect the defendant to the crime, the accomplice testimony must be disregarded, and the court must order acquittal. *See Ex parte Reynolds,* 588 S.W.2d 900, 902 (Tex.Crim. App.1979) (where there is insufficient evidence apart from uncorroborated accomplice testimony, an acquittal is required), *cert. denied, Texas v. Reynolds,* 445 U.S. 920, 100 S.Ct. 1284, 63 L.Ed.2d 605 (1980).

### Discussion

■■■ Apart from the accomplice accounts of the murder, the State presented the following evidence:

1. A witness saw a red car described by witness Melva Villarreal as belonging to Badillo and used in the commission of the murder at a residence near the Brush Country Store in the days prior to the murder.

2. Peña's body was discovered behind the counter of the store, as described by Villarreal and Guadalupe Ramirez.

3. The testimony of coroner Dr. Charles Odom revealed that Peña was shot three times in the head, as described by Villarreal, Johnson, and Guadalupe Ramirez.

4. Dr. Odom testified that the pattern of the bullets was consistent with Villareal's testimony that Peña had been lying on the floor and the gun had been close to his head.

5. Villareal led officers to the site where she said the store's cash register had been dumped, and officers found the register there.

6. Guadalupe Ramirez similarly identified the site where the register was dropped.

7. Guadalupe Ramirez took officers to a location where she testified the group had gone to eat chips and drink beer after the shooting. Wrappers and bottles were discovered there.

8. Trace evidence analyst Vicki Hall testified that there were elevated levels of barium and lead on Peña's hand, which was consistent with Villarreal's claim that Peña had attempted to grab the gun before he was shot.

9. Witness Dennis Broadwater testified that he saw Badillo in an old brown truck at the Brush Country Store prior to the murder. Johnson testified that Badillo used to drive an old brown pickup.

This evidence is not sufficient to tend to connect Badillo to Peña's murder. The evidence corroborating the testimony of the women—the location of the register and the chip bags, the placement of Peña's body, the trajectory of the bullets—merely serves to link the *accomplices* to the crime. It shows they had knowledge of what happened, but they would have had that same knowledge if one of them had done the shooting. Their testimony does nothing to make it more probable that the defendant did the crime than themselves. *See Beathard v. State,* 767 S.W.2d 423, 428 (Tex.Crim.App.1989) (that items taken from residence and the murder weapon were located where accomplice testified they would be found is not sufficient to link defendant to crime). Because the accomplices understandably wish to escape liability, we must be suspicious of their testimony unless the portion of it implicating the defendant is corroborated. *See id.* at 429 (underlying basis for accomplice witness rule challenges the witness's character and puts bias at issue).

We recognize that in *Beathard* the court of criminal appeals did rely on ballistic and trajectory evidence, in part, to find that an accomplice's testimony was sufficiently corroborated. *Id.* In that case, the court noted that such evidence could have been relied upon to resolve a fact dispute between the accomplice's and the defendant's testimony. The evidence corroborated the accomplice's story that the defendant had fired, and it

undermined the defendant's story that the accomplice had fired. Further, the court did not rely solely on ballistic evidence. There was also corroborative testimony regarding the defendant's clothing on the day of the murder, as well as the fact that the clothing had disappeared. *Id.* at 431. Finally, the defendant in *Beathard* admitted to being at the scene in the presence of the accomplice, and such testimony has been held to be sufficiently corroborative. *McDuff v. State,* 939 S.W.2d 607, 613 (Tex.Crim.App.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 125, 139 L.Ed.2d 75.

We find also that evidence that Badillo drove a red car does not link him to the commission of the offense, any more than testimony that he visited and/or lived in an apartment near the store. This testimony does no more than prove that Badillo owned a red car and that he had acquaintances in the area. The former fact proves only that the women had some knowledge of the car Badillo drove. The latter fact is suggestive of very little, as well, since Badillo's boss and some co-workers lived near the store.

In determining that the evidence is insufficient to support the accomplice testimony, we give careful consideration to the testimony of Dennis Broadwater, who testified that he saw Badillo in front of Brush Country Store on the afternoon of the murder. Broadwater testified that Badillo was sitting in the back of a brown pickup with three Hispanic males and that, in the store, Peña seemed "nervous."

As a first matter, we cannot even say that this testimony "corroborates" the testimony of the three women. Broadwater said he was at the store sometime in the late afternoon. The State did not attempt to show the time of the murder, and the testimony of the women on this issue was inconsistent.[4] Thus, there is no way of knowing when, in relation to the murder, Broadwater saw Badillo. *See Fernandez v. State,* 396 S.W.2d 885, 886 (Tex.Crim.App.1965) (no corroboration where only witness besides accomplice

says defendant and accomplice were near the crime scene several hours before offense). Further, the women testified that Badillo was in a red car, in the company of six individuals, including the women. Broadwater saw Badillo in the back of a pickup, with three men.

Even if the testimony could be considered as some evidence that corroborates the accomplice testimony, we find that it does not tend to link Badillo to the crime. It merely puts him in front of a public store at some time in the afternoon, before the murder of that evening. This is insufficient, under a line of Texas cases that hold that the defendant's mere presence is insufficient to corroborate accomplice testimony. *Beathard,* 767 S.W.2d at 428. However, such evidence can be considered, if coupled with other suspicious circumstances. *Id.* at 430 (defendant had checked library books out twice in one week in attempt to establish alibi); *Killough v. State,* 718 S.W.2d 708, 711 (Tex.Crim.App. 1986) (flight, presence of money on defendant's person, defendant's gun "looked like" one used in commission of crime, defendant used false name); *Passmore v. State,* 617 S.W.2d 682, 685 (Tex.Crim.App.1981) (at time defendant was seen, business had been closed for six hours; defendant was observed in company of accomplice; defendant fled from scene), *overruled on other grounds, Reed v. State,* 744 S.W.2d 112 (Tex.Crim.App. 1988); *Deas v. State,* 531 S.W.2d 810, 813 (Tex.Crim.App.1976) (defendant had negotiated for use of cattle truck used to steal cattle shortly before crime and was seen in company of accomplices to theft); *Clary v. State,* 491 S.W.2d 900, 902 (Tex.Crim.App. 1973) (defendant admitted being with accomplice all night, stolen merchandise was found in defendant's car); *Wolf v. State,* 674 S.W.2d 831, 840 (Tex.App.—Corpus Christi 1984, pet. ref'd) (defendant's voice, encouraging others to hit the victim harder, caught on cassette tape; defendant rented vacuum cleaner following day to clean up mess; de-

---

4. Broadwater testified he was at the store late in the afternoon of May 5. Villarreal testified that the shooting occurred at night, after dark. Johnson testified that the murder occurred at 6:00 p.m. Norma Gutierrez, one of the individuals who discovered the body, estimated that she was in the store at 8:30 p.m. The owner of the store, Juane Arrevalo, who lived next door, was alerted of the crime at 8:37 p.m. The police were first called at 8:54 p.m., according to their records.

fendant failed to disclose crime), *overruled on other grounds, Reed v. State,* 744 S.W.2d 112 (Tex.Crim.App.1988).

In *Graham v. State,* 643 S.W.2d 920, 925 (Tex.Crim.App.1981), the court allowed the accomplice testimony to stand when accompanied by the testimony of three eyewitnesses who saw the defendant's car (all identified the same car) in front of the gas station where the murder occurred. *Graham,* 643 S.W.2d at 925. One of the witnesses testified that she saw the blood-stained victim, then saw someone who looked like the defendant walking away from the scene. *Id.* We do not believe that the facts before us provide this much corroboration. Broadwater saw the victim alive and well, and he saw Badillo outside the store, lounging in the back of a pickup, which is not claimed to be the vehicle Badillo drove when the murder was committed. We cannot say that Broadwater saw Badillo near the time the murder was convicted or in the presence of the accomplices.

Circumstantial evidence linking Badillo to the crime is lacking. Although the cash register stolen at the time of the murder was eventually recovered, it revealed no latent prints linking Badillo to the crime. No weapon has been found. Although one of the accomplices claimed the gun was thrown in the same pond as the register, it was never located, even after the pond was drained. None of the recovered chip bags and beer bottles bore Badillo's prints. Additionally, Badillo's prints did not appear on any part of the interior of the store. Badillo's car was searched twice: the first time, when he was picked up for questioning in connection with the crime, nothing was found. The second time, two years later, when the car was located at a dump, some items (a tire tool, screw driver, pliers) were seized, but the state crime lab report stated that the lab could find nothing linking those items to the crime. The State simply presented no evidence, apart from the testimony of the accomplices, that linked Badillo to the crime.

Finally, we recognize that the State offered prior statements made by Miguel Ramirez that implicated Badillo in the murder. One of these statements was given to police early in the murder investigation. The other was testimony given during a 1992 habeas corpus proceeding.

The Texas Court of Criminal Appeals has held that out-of-court statements made by accomplices need not be corroborated under the accomplice-witness rule. *Bingham v. State,* 913 S.W.2d 208, 213 (Tex.Crim.App. 1995). However, this case is distinguished. First, one of the statements offered was Ramirez's *in-court* testimony given during a habeas corpus proceeding. Under the *Bingham* definition, this is testimony adduced at trial. *See id.* at 210 (testimony for the purposes of article 38.14 is that which is "adduced in open court by live witnesses under oath").

█ We also do not believe *Bingham* controls here because Miguel Ramirez's statements were offered solely for the purposes of impeaching Ramirez's in-court refusal to implicate Badillo. Impeachment testimony is not competent to show guilt. *See Rosales v. State,* 932 S.W.2d 530, 537 (Tex. App.—Tyler 1995, pet ref'd); *see also Owens v. State,* 916 S.W.2d 713, 717 (Tex.App.— Waco 1996, no pet.) (prior inconsistent statements are admissible for the *limited* purposes of impeachment) (emphasis in original).

We are thus left with no competent evidence that corroborates the testimony of the accomplices or that supports the jury's verdict.

### CONCLUSION

We find that there is no corroborating testimony that tends to link Badillo to this crime. The jury was precluded from relying on the accomplice testimony by legislative rule. Without that testimony, the evidence was legally insufficient to support a verdict of guilty. On this basis, we must order an acquittal.

RICKHOFF, J., concurring in opinion.

RICKHOFF, Justice, concurring.

I must concur in the majority opinion. I write only to urge the legislature to abandon our paternalistic "accomplice witness rule." *See* TEX.CODE CRIM. PROC. ANN. art. 38.14 (Vernon 1979). Pursuant to this rule, "[a]

conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed." *Id.* This is a rule that never found acceptance at common law. *See* 7 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 2056 (Chadbourn rev. ed.1978). From this record, one can surmise that it was the potential application of this rule that, in part, resulted in the interminable delay in preparing this case for trial and the resulting injustice of either an innocent man confined or, as this jury found, a guilty man now freed.

Although many states, including Texas, eventually adopted the accomplice witness rule by statute, it has apparently never been the majority rule in the United States. *See id.* (noting that at one time nearly half of the states had enacted some form of an accomplice witness statute). In recent decades, many jurisdictions have abandoned their statutory accomplice witness rules. By my count, only fourteen jurisdictions other than Texas still retain such a rule by statute. *See* ALA.CODE § 12–21–222 (1997); ALASKA STAT. § 12.45.020 (Michie 1996); ARK.CODE ANN. § 16–89–111(e) (Michie 1987); CAL.PENAL CODE § 1111 (West 1985); GA.CODE ANN. § 24–4–8 (1995); IDAHO CODE § 19–2117 (1997); IOWA CODE ANN. § 813.2, Rule 20 (West Supp.1997); MINN.STAT. ANN. § 634.04 (West 1983); NEV.REV.STAT. ANN. § 175.291 (Michie 1997); N.Y. CRIM. PROC. LAW § 60.22 (McKinney 1992); N.D. CENT.CODE § 29–21–14 (1991); OKLA. STAT. ANN. tit. 22, § 742 (West 1992); OR.REV.STAT. § 136.440 (1995); S.D. CODIFIED LAWS § 23A–22–8 (Michie 1988). Even among jurisdictions that retain the rule, we are alone in the strictness with which we apply it. Only in Texas is a person indicted for the same offense as the accused considered to be an accomplice as a matter of law. *See Smith v. State,* 897 S.W.2d 348, 350 (Tex.Crim.App.1995) (Mansfield, J., dissenting to refusal of State's petition for discretionary review). At other times, our courts seem willing to find the smallest detail sufficient to abandon the rule. *See Graham v. State,* 643 S.W.2d 920 (Tex.Crim.App.1983).

Moreover, this rule wrongly intrudes upon the jury's province. We routinely ask jurors to resolve life's most difficult issues in criminal cases. *See H.E. Butt Grocery Co. v. Bilotto,* 928 S.W.2d 197, 204 (Tex.App.—San Antonio 1996, writ granted) (Rickhoff, J., dissenting). Particularly inconsistent is our trusting juries to have the most open sentencing authority yet restricting their view of the witnesses. Issues of credibility and weight of testimony have been deemed particularly appropriate for jury determination. *See* TEX.CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1966) (providing that "[t]he jury, in all cases, is the exclusive judge of the facts proved, and of the weight to be given to the testimony"). In this case there was a vehicle full of accomplice witnesses. What if there were a bus full? Should a dozen accomplice witnesses testifying identically be ignored? There is no rule that the jury must regard highly all traditionally unsuspect witnesses such as clergy. In our culture, jurors are sophisticated enough to discern that the highest to the lowest members of society are capable of telling in court a truth or a lie. The entire purpose of impaneling a jury is for them to determine the facts based upon the weight that should be accorded the testimony of all the witnesses. If the concern is that evaluating the credibility of an accomplice is too difficult for a jury, the accomplice witness rule provides no solution. As one commentator aptly noted, "[T]he legislative creation of a rule of law, by introducing detailed refinements of definition to be applied by the jurors, has merely tended to confuse them with sounds of words, and to place in the hands of counsel a set of juggling formulas with which to practice upon the chance of obtaining a new trial." *See* WIGMORE, *supra,* § 2058.

In the interest of justice, it is time for our legislature to abandon our statutory accomplice witness rule and trust local juries to evaluate the credibility of all the witnesses appearing before them.