# NO. 12-12-00243-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JEFFREY DALE CHAMBERLAIN,* *APPELLANT* | § | *APPEAL FROM THE 420TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *NACOGDOCHES COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Appellant, Jeffrey Dale Chamberlain, was charged by indictment of possession of a controlled substance with intent to deliver (count one) and possession of certain chemicals with intent to manufacture methamphetamine (count two). In a bench trial, the trial court found Appellant guilty of the offenses charged and assessed his punishment at imprisonment for thirty years on each count. Appellant presents two issues. We affirm.

### BACKGROUND

Through a confidential informant, Nacogdoches Deputy Sheriff Kenneth King received word that there was going to be a methamphetamine "cook" at an unoccupied house and storage building on the Koonce Road owned by the Commander family. Deputy King assembled a force of two teams of constables and sheriff's deputies to execute the search warrant obtained based on the informant's report. One group entered the house while the other team forced entry into the large storage building located approximately forty feet behind the house. The officers found four people in the house: Chris Commander, the son of the owners; Rebecca Middleton; an unidentified woman, and Appellant.

In the house, the officers found clear plastic baggies containing 1.97 grams of methamphetamine, coffee filters containing 1.03 grams of methamphetamine, and small

quantities of the drug in Chris Commander's pants pocket and in the bed headboard in the bedroom. The police also found a container in a backpack in the kitchen containing 207.84 grams of liquid containing methamphetamine at some stage of production.

The officers making a simultaneous entry into the large storage building encountered the strong odor peculiar to methamphetamine production. They found a warm flask and two ecstasy tablets. They also found empty blister packets used to package allergy or cold tablets containing pseudoephedrine or ephedrine, chemicals used in the manufacture of methamphetamine. The officers found no drugs or paraphernalia on Appellant's person.

Called by the State, Chris Commander told the court that he and Appellant had been together for two or three days preparing to cook meth before the officers broke in on them. Commander testified that Appellant brought red phosphorous and iodine and he provided the pseudoephedrine. According to Commander, Appellant did his "cook" in the large storage building while he made a batch in the house. They planned to divide their production equally.

Appellant testified that although he had participated in making meth with Commander in the past, he was not involved in the process in progress when the officers broke in on them. He had come to the house only to buy drugs for his own use, he claimed. Appellant acknowledged that, with a couple of interruptions, he had been at the house for six hours before the officers came. He was there, he insisted, waiting to buy one and one-half grams of meth from Commander, but not to make it himself. He denied that he had supplied Commander with red phosphorous and iodine. He vigorously denied selling methamphetamine to anyone. The $140.00 he had when arrested approximated the normal price for the one and one-half grams of methamphetamine he intended to buy from Commander.

## CORROBORATION OF ACCOMPLICE TESTIMONY

In his first issue, Appellant contends that there is no evidence tending to connect him with the offenses that corroborates the testimony of the accomplice, Chris Commander.

**Applicable Law**

A conviction may not be sustained solely on the testimony of an accomplice unless there is corroborating evidence that tends to connect the defendant with the offense committed. TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005). The corroboration is insufficient if it merely shows the commission of the offense. *Id*. In order to determine if the accomplice witness

2

testimony is corroborated, the reviewing court must eliminate from consideration the accomplice testimony and determine whether the other inculpatory facts and circumstances in evidence tend to connect the appellant to the offense. *McDuff v. State*, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997). The nonaccomplice evidence does not have to directly connect the appellant to the crime, nor, standing alone, does it have to establish his guilt beyond a reasonable doubt. *Id*. at 613. The nonaccomplice evidence merely has to tend to connect the appellant to the offense. *Id*. Mere presence at or near the scene of the offense is not sufficient corroboration. *Badillo v. State*, 963 S.W.2d 854, 858-60 (Tex. App.–San Antonio 1998, pet. ref'd). However, the appellant's presence in the company of the accomplice before, during, and after the commission of the offense, coupled with other suspicious circumstances, may tend to connect the appellant to the offense. *Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996).

**Discussion**

Chris Commander testified that he and Appellant agreed to do a methamphetamine "cook" two or three days before their arrest on March 6, 2009. According to Commander, Appellant brought red phosphorous and iodine. Commander already had 300 pills containing pseudoephedrine, the other necessary ingredient. Commander told the court that he gave 200 tablets containing pseudoephedrine to Appellant. They intended to split the finished product evenly between them. Appellant did his "cook" in the large storage building behind the house while Commander did another inside the dwelling. Commander testified that Appellant sold at least a part of his meth to the two or three people who came by the property before the officers arrived on March 6, 2009.

At the time of trial, Commander was serving an eight year prison sentence for the same offense Appellant allegedly committed.

Appellant testified in his own behalf. According to Appellant, he arrived at Commander's house around 11:30 a.m. on March 6, 2009, with $140.00 intending only to buy methamphetamine. He was there at 6:30 p.m. when the police arrived because he was still waiting for Commander to have a finished product to sell.

Appellant admitted that in the past he had participated in the manufacture of meth with Commander. But he insisted he was not involved in any way with the production process concluded on the day of their arrest. He denied Commander's assertion that he had sold drugs that day. Appellant admitted being an intravenous drug user for thirty years. Appellant

3

acknowledged that he had been at Commander's two days before they were arrested but only to buy a "fifty dollar bump of methamphetamine."

When the police arrived at 6:30 p.m., they discovered several grams of methamphetamine already prepared. It is a reasonable assumption that an ordinary customer, there only to buy drugs, would have bought the methamphetamine on hand and left. Appellant's presence at the place of manufacture for the better part of six hours belies his claim to have been only a customer and is a strongly suspicious circumstance connecting him to the charged offense. His drug addiction and confessed participation in previous methamphetamine making with Commander are also suggestive of Appellant's complicity. These circumstances, coupled with Appellant's presence at the scene with Commander during and after the methamphetamine "cook," tend to connect Appellant to the offenses charged. They are sufficient corroboration of the accomplice's testimony. Appellant's first issue is overruled.

### POSSESSION OF CHEMICAL

In count two of Appellant's indictment, the State alleged Appellant possessed pseudoephedrine or acetone with the intent to manufacture methamphetamine. Appellant maintains the evidence is factually insufficient to support his conviction for this offense. In *Brooks v. State*, the court of criminal appeals held the *Jackson v. Virginia* standard to be the only standard a reviewing court should apply in determining the sufficiency of the evidence. 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). In considering Appellant's issue, we shall apply the *Jackson v. Virginia* standard.

**Standard of Review and Applicable Law**

Evidence is insufficient if, when viewing the evidence in a light most favorable to the verdict, no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979).

A person commits an offense if, with intent to unlawfully manufacture a controlled substance, the person possesses or transports an immediate precursor, a chemical precursor, or an additional chemical substance named as a precursor by the director of the Texas Department of Public Safety under Texas Health and Safety Code Section 481.077(b)(1). TEX. HEALTH & SAFETY CODE ANN. § 481.124(a)(2)(3) (West 2010). The Texas Controlled Substances Act

4

defines pseudoephedrine as a "chemical precursor." **Id**. § 481.002(51)(O) (West 2010). The indictment alleges that Appellant "with intent to unlawfully manufacture a controlled substance, namely, methamphetamine, possess[ed] an immediate precursor, to-wit: pseudoephedrine or a chemical precursor, to-wit: acetone[.]"

**Discussion**

Deputy Kenneth King led the team that breached the door into the large storage shed where the team encountered the strong, peculiar odor associated with methamphetamine making. They also discovered a substantial quantity of empty blister packs in a trash can. Deputy King testified that blister packs are typically used to package over the counter cold and allergy medicines that contain pseudoephedrine or ephedrine, which are necessary precursors to the manufacture of methamphetamine. The State did not introduce the blister packs into evidence, nor was there any testimony describing their labeling.

However, Chris Commander testified that he gave Appellant 200 pills containing pseudoephedrine that Appellant needed in making his batch of meth in the storage building. Commander also testified that "we had acetone."

We conclude the evidence is sufficient to sustain Appellant's conviction on count two of the indictment. Appellant's second issue is overruled.

**DISPOSITION**

Having overruled both of Appellant's issues, we ***affirm*** the trial court's judgment.

**BILL BASS**
Justice

Opinion delivered September 4, 2013.
*Panel consisted of Griffith, J., Hoyle, J. and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*

(DO NOT PUBLISH)

# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**SEPTEMBER 4, 2013**

**NO. 12-12-00243-CR**

**JEFFREY DALE CHAMBERLAIN,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 420th District Court

of Nacogdoches County, Texas (Tr.Ct.No. F0916778)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that the decision be certified to the court below for observance.

Bill Bass, Justice.
*Panel consisted of Griffith, J., Hoyle, J. and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*