**ESTATE OF Horace CLIFTON, et al., Petitioners,**

v.

**SOUTHERN PACIFIC TRANSPORTATION CO., Respondent.**

No. C–4046.

Supreme Court of Texas.

Jan. 15, 1986.

Rehearing Denied June 11, 1986.

Kaiser, David Grant, Abraham, Watkins, Nichols, Ballard, Onstad & Friend, Friend, Dale, Kronzer, Abraham, Watkins, Nichols, Ballard & Friend, O'Quinn, John, O'Quinn & Hagans, Staggs, Jr., Frank M., O'Quinn & Hagans, Wardell, Ronald, Fisher, Galla-

gher, Perrin & Lewis, Gallagher, Michael t., Fisher, Gallagher, Perrin & Lewis, Houston, for petitioners.

Newton, Howard P., Matthews & Branscomb, San Antonio, for respondent.

McGEE, Justice.

This is a wrongful death case. Ronald Athey, James Bozeman and Horace Clifton were killed when the van in which they were riding was struck by a freight train owned by Southern Pacific Transportation Company. Diane Athey, Faye Bozeman and Linda Clifton sued Southern Pacific and Rusty Reams, the train's engineer. The jury found Reams was not negligent but that Southern Pacific was, and accordingly, the trial court rendered judgment against Southern Pacific. On appeal, the court of appeals reversed the trial court's judgment and remanded the cause for a new trial. 686 S.W.2d 309 (Tex.App.1985). We reverse the judgment of the court of appeals and render judgment consistent with the jury verdict.

Athey, Bozeman and Clifton came to Del Rio, Texas, with their wives, in June of 1981, to compete in a statewide fishing tournament. After checking into their hotel, the three men left to find a boat ramp from which to launch their boat the following morning. The course of their search brought them to Box Canyon Road which is intersected by a railroad crossing. As the van crossed the tracks, a Southern Pacific train struck the van broadside, killing all three men.

Linda Clifton, individually and on behalf of Horace Clifton's mother, the Clifton children and Horace Clifton's estate, filed suit against Southern Pacific and Rusty Reams. Diane Athey, individually and on behalf of Ronald Athey's parents, the Athey children, and Ronald Athey's estate, also sued.

Southern Pacific and Rusty Reams filed a third-party action for contribution and indemnity against the Estate of James Bozeman. They alleged that Bozeman was the driver of the van and that his conduct was contributorily negligent. Faye Boze-

man, James' executrix, counterclaimed against Southern Pacific and Rusty Reams. Clifton and Athey amended their pleadings to add Bozeman's estate as a defendant. Shortly before trial, Southern Pacific and Rusty Reams amended their pleadings to join Ronald Athey as a cross-defendant, alleging that Athey was the driver of the van and that his conduct was contributorily negligent. This claim was severed by the trial court. Prior to the verdict, Athey and Clifton settled their claims with the Bozeman estate.

At trial, Southern Pacific had the burden of proving, by a preponderance of the evidence, that James Bozeman was the driver of the van, that he was negligent in the operation of the van, and that his negligence was a proximate cause of the collision. If Southern Pacific had obtained an affirmative finding on all three issues, it would have been entitled to a jury finding of Bozeman's percentage of fault. Consequently, Southern Pacific had the burden of submitting special issues addressing these points in substantially correct form. Tex.R.Civ.P. 279.

At Southern Pacific's request, the trial court submitted issues to the jury asking if Bozeman was the driver of the van; was "the driver" of the van negligent; and, was that negligence a proximate cause of the collision. Although the jury found "the driver" of the van was negligent and that the negligence was a proximate cause of the occurrence, the jury failed to find that Bozeman was the driver of the van. Consequently, the jury did not answer the comparative negligence issue which was conditioned upon a finding that Bozeman was the driver of the van.

When the jury returned its verdict, Southern Pacific requested that the trial court disregard the jury's failure to find that Bozeman was the driver of the van at the time of the collision. But, Southern Pacific did not object to the jury's failure to answer the comparative negligence issue. In order to preserve error and justify a remand by the court of appeals, Southern Pacific was required to take both steps.

*Lewis v. Texas Employers' Insurance Ass'n*, 151 Tex. 95, 246 S.W.2d 599, 560 (1952).

Obviously, Southern Pacific's decision not to object to the jury's failure to answer the comparative negligence issue was a strategy move on its part. Southern Pacific chose to waive its right to a percentage allocation of fault to the driver of the van. It accepted that part of the verdict and, instead, argued that article 2212a did not apply because the jury failed to answer the comparative negligence issue. TEX.REV. CIV.STAT.ANN. art. 2212a (Vernon Supp. 1985). Southern Pacific contended that the trial court should grant it a remedy outside of article 2212a, such as a *Bradshaw* credit or a *Palestine Contractors* release of one-half of the damages for Bozeman's settlement with Athey and Clifton. *Bradshaw v. Baylor University*, 126 Tex. 99, 84 S.W.2d 703 (1935); *Palestine Contractors, Inc. v. Perkins*, 386 S.W.2d 764 (Tex.1964). The trial court disagreed and held Southern Pacific 100 percent liable. The court of appeals likewise disagreed with this argument and properly held that Southern Pacific was not entitled to a credit or a release of one-half of the judgment.

The court of appeals agreed, however, that the trial court erred in failing to disregard the jury's failure to find that Bozeman was the driver of the van at the time of the collison. The court of appeals held that Bozeman was the driver as a matter of law and, therefore, Southern Pacific was entitled to a *Cypress Creek* percentage of fault determination pursuant to TEX.REV. CIV.STAT.ANN. art. 2212a (Vernon Supp. 1985). *Cypress Creek Utility Service Co. v. Muller*, 640 S.W.2d 860 (Tex.1982). Additionally, holding that because a fact question necessary to the judgment was left unresolved due to the jury's failure to assign a percentage of fault to Bozeman, the court of appeals reversed the judgment and remanded the cause for a new trial in the interest of justice. 686 S.W.2d at 321.

■ The court of appeals improperly held that Southern Pacific was entitled to a remand. This decision was based solely on

Southern Pacific's cross-point that James Bozeman was the driver of the van as a matter of law. Regardless of whether Southern Pacific was successful in proving that Bozeman was the driver of the van as a matter of law, Southern Pacific was not entitled to a remand because it failed to take the necessary steps to perfect its appeal.

Southern Pacific did not object that the verdict was incomplete due to the unanswered comparative negligence issue nor did it request that the jury redeliberate. Southern Pacific did not request additional instructions and issues or object to the trial judge's acceptance of the verdict. The jury's failure to allocate a percentage of fault to Bozeman was due to two factors: (1) the improper conditioning of the comparative negligence issue requiring a finding that more than one of the three named defendants was negligent; and (2) the fact that the jury failed to find Bozeman was the driver of the van and, therefore, could not be guilty of negligence in driving the van.

A court of appeals can only reverse and remand when the trial court's judgment is in error and a party has properly preserved the court's error. *City of Houston v. Blackbird*, 394 S.W.2d 159, 165 (Tex.1965). Southern Pacific's failure to undertake all of the prerequisite steps for perfecting appeal resulted in a waiver of any error committed at trial. *Lewis*, 246 S.W.2d at 600. An errorless judgment will not be reversed. *City of Houston*, 394 S.W.2d at 164; *Chevalier v. Lane's, Inc.*, 147 Tex. 106, 213 S.W.2d 530, 535 (1948). In effect, the jury found, as between the three named defendants, Southern Pacific, Rusty Reams and James Bozeman, that Southern Pacific was 100 percent negligent. The trial court's judgment reflected this. We agree with that holding and reverse the judgment of the court of appeals.

■ The court of appeals was correct in awarding the plaintiffs loss of society damages as found by the jury. Our decision in *Sanchez v. Schindler* makes it clear that in wrongful death cases, "actual damages" include loss of companionship and mental anguish. 651 S.W.2d 249, 254 (Tex.1983). While *Sanchez* dealt with the loss of companionship and mental anguish a parent endures with the death of a child, implicit in that decision was the intent to extend its holding to other members of that class who have a cause of action against a tortfeasor under the Wrongful Death Statute. *Id.* at 252. In *Cavnar v. Quality Control Parking*, we recognized there is no rational reason for the court to exclude any member of the class or prefer one member of the class to the others. 696 S.W.2d 549, 551 (Tex. 1985). In that case, we held that adult children were entitled to recover damages for mental anguish and loss of companionship resulting from the death of their parent. Therefore, the damages awarded by the jury to the plaintiffs for loss of companionship are reinstated since all plaintiffs in this case belong to the class of persons enumerated in Civil Practice and Remedies Code, ch. 71, § 71.004(a), 1985 Tex.Sess. Law Serv. 7158, 7160 (to be codified at TEX.CIV.PRAC. and REM. CODE § 71.-004(a) (Vernon).

■ The court of appeals correctly held that Diane Athey was entitled to mental anguish damages, as found by the jury. *Sanchez*, 651 S.W.2d at 254. However, that court held there was no evidence to support an award of damages for mental anguish for Mr. Athey's parents. Southern Pacific did not challenge the legal sufficiency of the evidence in the trial court with its motion to disregard the *Sanchez* damage findings. The only basis upon which Southern Pacific asked the trial court to disregard these findings was that these damages were not legally recoverable. A motion for judgment notwithstanding the verdict or to disregard jury findings must state the specific grounds. Tex.R.Civ.P. 301 and 324(c). Therefore, Southern Pacific waived any no evidence point it may have had with regard to mental anguish damages and it was error for the court to consider Southern Pacific's no evidence point on appeal. *Dallas Transit Co. v. Young*, 370 S.W.2d 6 (Tex.Civ.App.—Dallas

1963, writ ref'd n.r.e.). Since damages for mental anguish are recoverable by a parent for the loss of a child under *Sanchez*, the jury's finding of damages for mental anguish on behalf of Ronald Athey's parents is reinstated.

The court of appeals correctly held that the trial court's judgment n.o.v. on the issue of gross negligence is contrary to this court's decision in *Burk Royalty Co. v. Walls*, 616 S.W.2d 911 (Tex.1981). In *Burk Royalty*, we defined gross negligence as "that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it." *Id.* at 920. The defendant's state of mind distinguishes gross negligence from negligence.

Requiring the plaintiff to prove gross negligence only by direct evidence of a defendant's subjective state of mind, however, raises an almost insurmountable barrier to recovery. *Williams v. Steves Industries, Inc.*, 699 S.W.2d 570, 573 (Tex. 1985). Recognizing this dilemma, we held in *Burk Royalty* that a mental state may be inferred from actions. Considering all actions or circumstances indicating a state of mind amounting to a conscious indifference to the rights of others, a plaintiff may objectively prove a defendant's gross negligence by proving that, under the surrounding circumstances, a reasonable person would have realized that his conduct created an extreme degree of risk to the safety of others. *Williams*, 699 S.W.2d at 573.

Courts have not hesitated to allow punitive damages when an act would reasonably be thought to be highly dangerous. *See Kraus v. Alamo National Bank of San Antonio*, 586 S.W.2d 202 (Tex.Civ. App.—Waco 1979) *aff'd* 616 S.W.2d 908 (Tex.1981); *Wilson N. Jones Memorial Hospital v. Davis*, 553 S.W.2d 180 (Tex.Civ. App.—Waco 1977, writ ref'd n.r.e.). Both of these cases indicate that the act or omission constituting negligence was related to a finding that the defendant had "decided" to ignore the rights of others even in light of probable or threatened injury to them.

■ When reviewing a no evidence point on the issue of gross negligence, it is reviewed the same as any other no evidence point. The court must look at all the surrounding facts, conditions and circumstances and consider all evidence in a light most favorable to the party in whose favor the jury rendered a verdict, indulging every reasonable inference in such party's favor. *Burk Royalty Co.*, 616 S.W.2d at 922.

In this case, the submitted issue on gross negligence restricted the evidence the jury could consider in determining whether Southern Pacific's conduct constituted gross negligence. The jury was instructed to consider only the conduct inquired about in issues numbers 2 and 7. Issue number 2 concerned Southern Pacific's failure to have flashing signal lights at the crossing and issue number 7 concerned the rate of speed of the train.

Because the jury found that speed was not a factor in causing the accident, we do not consider any of that evidence relevant to the issue of gross negligence. The jury found, however, that Southern Pacific's failure to have flashing signal lights at the crossing was negligence and a proximate cause of the accident. Thus, the evidence we will consider in determining whether Southern Pacific's conduct constituted gross negligence concerns Southern Pacific's failure to install a warning device at this crossing.

The evidence shows that Southern Pacific relies on the Priority Index System which was established in 1974 by the Texas Department of Public Safety to determine the priority of updating and installing warning signals at railroad crossings. Some of the factors that are used to establish a crossing's priority on the index include: the number of trains that cross the crossing each day, the type and number of warning devices already at the location, and the average daily traffic count crossing the tracks. A factor specifically not considered is a motorist's ability to view an approaching train.

Robert Patterson, Public Projects Engineer for Southern Pacific in its Houston office, had the responsibility to recommend to Southern Pacific where railroad crossing warning devices should be installed in Texas. Patterson testified that when there are stop signs at a railroad crossing, Southern Pacific does not take into consideration the visibility a motorist has in approaching a crossing, to determine whether the crossing is dangerous enough to erect additional warnings or signals. He stated bluntly that, if stop signs are used, visibility is no longer a factor. The evidence shows there had not been a stop sign for southbound traffic—the direction the van was traveling—at the Box Canyon crossing for at least seven years prior to the accident and that this was known by Southern Pacific personnel for at least five years prior to the accident.

Jose Guevara, a Southern Pacific special agent, testified that for as long as he had worked as a special agent for Southern Pacific during the five years prior to the accident there had not been a stop sign for southbound traffic at the crossing. The evidence also shows that although there was a stop sign in place for northbound traffic, it was shot full of holes and could not be read. Guevara further testified that he had reported the missing sign to his superiors in Del Rio on at least two occasions but that the sign had never been replaced.

█ Regardless of whether it may have been the county's responsibility to replace the missing stop sign, Southern Pacific had a duty to report the fact that the stop sign was missing and to see that it was replaced as soon as possible. If Southern Pacific chose to rely on the stop sign's presence to relieve itself of having to consider a motorist's visibility upon approaching the tracks, Southern Pacific had the duty and responsibility to ensure the stop sign's presence at all times.

█ There is no evidence in the record that shows Southern Pacific ever took any action during the five years prior to the accident to see that the stop sign was re-

placed although it knew the sign was missing and that it was relying on the sign's presence to warn motorists of the crossing. Taking this evidence into consideration with the fact that the testimony of the employees and agents of Southern Pacific showed that they were aware that the mountain cut, through which the train passes, was a serious obstruction to visibility, is some evidence that Southern Pacific knew about the peril but consciously disregarded it. The jury's award of punitive damages on behalf of all plaintiffs is reinstated.

█ Plaintiffs' final point of error is whether the Atheys are entitled to prejudgment interest on all damages awarded to them. In *Cavnar*, we recognized the right of a plaintiff to recover prejudgment interest on damages that have accrued by the time of judgment. 696 S.W.2d at 554. In wrongful death cases, interest shall begin to accrue on both pecuniary and non-pecuniary damages from a date six months after the occurrence of the incident giving rise to the cause of action. The Atheys contend they are entitled to prejudgment interest on all damages awarded, including punitive damages and future damages. We disposed of this point in *Cavnar* by holding that prejudgment interest cannot be recovered on punitive or future damages. *Id.* at 556. Accordingly, the Atheys may not recover prejudgment interest on any punitive or future damages awarded to them.

█ Although the Atheys would be entitled to prejudgment interest on the actual damages accrued up to the time of judgment, the jury was not asked to segregate past and future damages. As in *Cavnar*, the Atheys failed to segregate their accrued damages from their future damages and were awarded damages for both their past and future losses in lump sums. In *Cavnar*, we held that because the issues tendered did not segregate past losses from future losses, the plaintiffs were not entitled to recover prejudgment interest on those elements of damages. *Id.* The same

**642**

rule applies in this case. Athey's point of error relating to prejudgment interest is overruled.

The judgment of the court of appeals is reversed and judgment is rendered for the plaintiffs. Accordingly, the damages awarded to the plaintiffs for care, maintenance and support; for loss of society; and for mental anguish are reinstated. The jury's award of punitive damages to each of the plaintiffs is also reinstated. The Atheys' request for prejudgment interest is denied.