FILED IN
COURT OF CRIMINAL APPEALS

November 2, 2015

ABEL ACOSTA, CLERK

PD-0469&0470&0471&0472-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 11/2/2015 2:10:11 PM
Accepted 11/2/2015 2:22:31 PM
ABEL ACOSTA
CLERK

IN THE
COURT OF CRIMINAL APPEALS

| | | |
|---|---|---|
| JOHN B. ISBELL, | § | |
| *APPELLANT* | § | |
| V. | § | NO. PD-0469-15 |
| | § | |
| THE STATE OF TEXAS, | § | |
| *APPELLEE* | § | |

*ON THE GRANTING OF THE STATE'S PETITION FOR DISCRETIONARY REVIEW OF THE DECISION OF THE COURT OF APPEALS FOR THE SECOND COURT OF APPEALS DISTRICT OF TEXAS IN CAUSE NUMBERS 02-14-00124-CR, 02-14-00125-CR, 02-14-00126-CR, AND 02-14-00127-CR, REVERSING THE JUDGMENT OF THE TRIAL COURT IN CAUSE NUMBERS 1290119D, 1290121D, 1290851D, AND 1290852D IN CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY, TEXAS; THE HONORABLE MIKE THOMAS, PRESIDING.*

§§§
STATE'S BRIEF ON THE MERITS
§§§

SHAREN WILSON
Criminal District Attorney
Tarrant County, Texas

DEBRA WINDSOR, Assistant
Criminal District Attorney,
Chief, Post-Conviction

JAMES GIBSON, Assistant
Criminal District Attorney
401 W. Belknap
Fort Worth, Texas 76196-0201
(817)884-1687; Fax (817)884-1672
State Bar No. 00787533
coaappellatealerts@tarrantcounty.com

## IDENTITY OF THE PARTIES AND COUNSEL

The trial judge was Hon. Mike Thomas, presiding judge of Criminal District Court No. 4 of Tarrant County, Texas.

The State of Texas, represented by Sharen Wilson, Tarrant County Criminal District Attorney, is a party to this litigation. At trial, the State was represented by Paige Simpson and Brooke Panuthos, Assistant Criminal District Attorneys. On appeal, the State is represented by James Gibson, Assistant Criminal District Attorney, and Debra Windsor, Assistant Criminal District Attorney. The address of these attorneys is Office of the Criminal District Attorney of Tarrant County, 401 W. Belknap, Fort Worth, Texas 76196-0201.

Appellant, Defendant below, is John B. Isbell. Appellant was represented at trial by Hon. J. Steven Bush, 314 Main St., Suite 200, Fort Worth, Texas 76102 and on appeal by Hon. Barry G. Johnson, 2821 E. Lancaster, Fort Worth, Texas 76103.

# TABLE OF CONTENTS

PAGE

IDENTITY OF THE PARTIES AND COUNSEL....................................................i

INDEX OF AUTHORITIES................................................................ iii

THE CASE IN BRIEF ....................................................................1

STATEMENT OF FACTS ..................................................................2

SUMMARY OF STATE'S ARGUMENT ...................................................6

DISCUSSION ...........................................................................7

I.      Reversal of the July 18 convictions was unnecessary.....................................8

II.     Appellant's crimes on July 18 tended to connect him to the crimes committed on July 17.................................................................................9

CONCLUSION AND PRAYER...........................................................13

CERTIFICATE OF COMPLIANCE ....................................................14

CERTIFICATE OF SERVICE .............................................................15

# INDEX OF AUTHORITIES

**CASES**                                                    **PAGES**

*Almanza v. State*,
686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g) ...................................... 9

*Estate of Clifton v. Southern Pacific Transp. Co.*,
709 S.W.2d 636 (Tex. 1986) ................................................................................ 8

*De La Paz v. State*,
279 S.W.3d 336 (Tex. Crim. App. 2009) ........................................................... 12

*Druery v. State*,
225 S.W.3d 491 (Tex. Crim. App. 2007) ............................................................. 9

*Head v. State*,
No. 03-10-00414-CR, 2013 WL 1831576 (Tex. App.—Austin April 24, 2013,
no pet.) (unpublished) ....................................................................................... 13

*Hernandez v. State*,
939 S.W.2d 173 (Tex. Crim. App. 1997) ........................................................... 10

*Herron v. State*,
86 S.W.3d 621 (Tex. Crim. App. 2002) ............................................................. 10

*Lacaze v. State*,
346 S.W.3d 113 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) ................ 13

*Lawton v. State*,
913 S.W.2d 542 (Tex. Crim. App. 1995), *overruled on other grounds, Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998) ................................................. 10

*Mitchell v. State*,
No. 11-01-00294-CR, 2002 WL 32344526 (Tex. App.—Eastland 2002, no pet.)
(unpublished) ............................................................................................... 11, 12

*In re P.A.*,
    No. 05-96-01264-CV, 1997 WL 470147 (Tex. App.—Dallas Aug. 19, 1997, pet. denied) ..................................................................................................13

*Passmore v. State*,
    617 S.W.2d 682 (Tex. Crim. App. 1981) ........................................................10

*Zamora v. State*,
    411 S.W.3d 504 (Tex. Crim. App. 2013) ..........................................................9

## **Code**

TEX. CODE CRIM. PROC. art. 38.14 ............................................................................9

IN THE
COURT OF CRIMINAL APPEALS

JOHN B. ISBELL,              §
  APPELLANT          §
V.                          §  NO. PD-0469-15
                            §
THE STATE OF TEXAS,         §
  APPELLEE           §

*ON THE GRANTING OF THE STATE'S PETITION FOR DISCRETIONARY REVIEW OF THE DECISION OF THE COURT OF APPEALS FOR THE SECOND COURT OF APPEALS DISTRICT OF TEXAS IN CAUSE NUMBERS 02-14-00124-CR, 02-14-00125-CR, 02-14-00126-CR, AND 02-14-00127-CR, REVERSING THE JUDGMENT OF THE TRIAL COURT IN CAUSE NUMBERS 1290119D, 1290121D, 1290851D, AND 1290852D IN CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY, TEXAS; THE HONORABLE MIKE THOMAS, PRESIDING.*

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

THE CASE IN BRIEF

Appellant was convicted of (1) aggravated assault on a peace officer (pointing a shotgun at him); (2) deadly conduct (shooting a woman's car); (3) aggravated assault on a peace officer (ramming the officer's patrol car); and (4) evading arrest in a vehicle. Appellant was sentenced to forty-five years for each assault, twenty years for deadly conduct, and twenty years for evading arrest. RR VI – 38.

1

## STATEMENT OF FACTS

Around 6:00 a.m. on the morning of July 17, 2012, Appellant and Jamie Haney and Johnny Garrett went in Garrett's Jeep to visit Rick Horton at his home. RR IV – 36. Horton fixed a broken mirror on the Jeep, and they left straight away. RR IV – 37-38.

Around 7:40 that morning, Officer Steven Graves of the Azle Police did a license plate check on that Jeep. RR IV – 40. A hit was returned with a Class C warrant. *Id*. All the information he had received was Jonathan Garrett, white male, born in 1972. RR IV – 41. In the car, Officer Graves saw a female driver and a male passenger. *Id*. The woman was Jamie Haney. RR IV - 76. The man was Appellant. *Id*.

Officer Graves turned on his overhead lights and tried to stop the Jeep. RR IV – 42. Haney turned on the blinker, but she didn't pull over. RR IV – 43. Appellant leaned over the center console, pulled up a shotgun, and pointed it in Officer Graves' direction. *Id*. Officer Graves swerved to the right, just in case Appellant decided to shoot. RR IV – 44. He kept following the Jeep. RR IV – 45. Haney's speed increased to about 85 mph as she pulled to the shoulder of the roadway in order to pass other cars. RR IV – 46. Appellant continued to lean out the passenger window, waving the shotgun around. *Id*. The officer eventually lost sight of the Jeep. *Id*.

Around this time, Kelly Orr was driving with her daughter on that same street, Highway 199 in Azle. RR IV – 130, 132. A Jeep came quickly behind her, apparently trying to go around. RR IV – 130. The driver and passenger were "crazy," throwing hands in the air and moving around a lot. RR IV – 131. After the Jeep went around her, Orr could see the police car that had been chasing the Jeep. *Id*. Before that happened, however, Orr heard a loud "boom." *Id*. A couple of days later, she saw small bullet holes in her bumper. RR IV – 134.

Near Lake Worth, Medea Lee Spigler was also driving on Highway 199. RR IV – 143. A car came up fast behind her, and she also heard a loud noise. RR IV – 147. Spigler thought she had had a blow-out. RR IV – 148. She was going to pull over, but she looked behind her and saw the passenger in the Jeep hanging outside the window with a shotgun. RR IV – 148. Spigler was shaken up by the fact that she heard the shotgun go off near her. RR IV – 149.

Jamie Haney testified. She said that Appellant was definitely the passenger in her car. RR IV – 76. He had a shotgun with him in the car. *Id*. During the chase, while traveling at about 120 mph, Haney heard the shotgun go off. RR IV – 86. It was pointed forward. *Id*. Appellant turned to her and said, "You're my Bonnie." RR IV – 97. They got away from police that day. RR IV – 87.

3

Corporal Patrick Bovea searched the roadway in the area of the chase based on information that Appellant had dropped his shotgun into the road. RR IV – 67. He eventually found a shotgun. RR IV – 68. Leah Creighton, of the Fort Worth Police, found some shell casings on the side of Highway 199. RR IV – 102. She collected those. *Id*. The shells came from the same Mossberg shotgun that had also been recovered. RR IV – 119.

The following evening, July 18, Sgt. Cody Phillips of the Haltom City Police Department, had already received a bulletin from Azle Police Department describing the "shotgun chase" of the previous morning. RR IV – 250. Sgt. Phillips saw what looked like the Jeep parked on a street in Haltom City. RR IV – 251. He confirmed that it was the correct vehicle by checking the license plates. RR IV – 252. Sgt. Phillips was watching the Jeep when it started to take off. RR IV – 253. He followed it and turned on his overhead lights. RR IV – 254. The Jeep did not stop. *Id*. Officers Parsons, Michlitsch, and Gilley, joined in the chase. RR IV – 255. All three patrol cars had to drive through railroad crossing arms at Beach and Broadway (in Haltom City) in order to continue the pursuit. RR IV – 258. The chase continued onto I-35 and I-820, where Appellant (who was driving this time) made it to 115 mph. RR IV – 260. During this chase, Appellant crossed into oncoming traffic, jumped a median, jumped curbs, drove on the shoulder, and ignored traffic signals. RR IV – 262-63. All in all, the chase lasted

about 24 and a half miles. RR IV – 163. He even turned off his headlights to avoid being seen. RR IV – 263. It was at this point that he rear ended a car in a high speed collision. RR IV – 200-201.

Appellant ended up going through a ditch and spinning out inside an Allsup's gas station parking lot. RR IV – 177. Officer Parsons followed behind. RR IV – 178. Appellant turned back around, pointed toward Officer Parsons' car, and accelerated toward his driver's door. *Id*. Parsons sped up just in time for Appellant to merely ram the patrol car in the rear. RR IV – 179. Finally, Appellant crashed the Jeep into a mailbox. *Id*. He got out of the driver's side to run and Haney got out of the other side. RR IV – 265. Sgt. Phillips basically tackled Appellant, but he would not relent. RR IV – 266. He finally had to be tased, then handcuffed. RR IV – 267. Haney was caught as well. RR IV – 268.

Appellant was convicted of four separate offenses: (1) aggravated assault on Officer Graves (pointing the shotgun at him – 7/17); (2) deadly conduct on Kelly Orr (shooting her car – 7/18); (3) aggravated assault on Officer Parsons (ramming his patrol car – 7/18); and (4) evading arrest in a vehicle (7/18).

## SUMMARY OF STATE'S ARGUMENT

Appellant was convicted of four offenses: two occurred on July 17 and two occurred on July 18. The Fort Worth Court of Appeals held that he was entitled to an accomplice witness instruction as to the July 17 offenses. However, in fashioning a remedy, the court reversed *all four* offenses, including the two unrelated ones. There was no basis for this remedy.

The Court of Appeals' egregious harm analysis failed to consider how Appellant's flight from police and subsequent car chase on July 18 tended to connect him to the July 17 crimes. Specifically, Appellant fled from police, he fled in the same car that he used as a platform to shoot at officers the day before, and he began a car chase with the same woman who began a car chase with him the day before.

Jamie Haney drove a Jeep during a car chase in which Appellant was a passenger. During the chase, Appellant pointed a shotgun at pursuing police officers and even fired at (and hit) a civilian car on the road. Haney and Appellant got away. The next day, Appellant was driving the same Jeep, had Haney as a passenger, and again led police on a high-speed chase. Appellant was convicted of four offenses (two assaults from July 17 and one evading and one assault from July 18) arising from these two car chases.

The Fort Worth Court of Appeals held that Haney was an accomplice as a matter of fact with regard to the July 17 offenses, and that the jury should have been instructed to decide whether sufficient non-accomplice testimony tended to connect Appellant to the July 17 offenses. *Isbell*, 2015 WL 1407749 at *3. The Court also held that Appellant was egregiously harmed because no non-accomplice evidence tended to connect Appellant to those offenses. *Id.* In addition, finding that "[t]he harm caused by the lack of the accomplice-witness instruction or evidence corroborating Haney's testimony permeated the entire trial," the Court of Appeals reversed *all four* of the judgments. *Id.*

7

I.      *Reversal of the July 18 convictions was unnecessary.*

The appellate court's decision to throw out all the offenses went too far. The Court's statement that the lack of an instruction "permeated" the entire trial is merely conclusory and does not have a basis in law. To the extent that an accomplice witness instruction was necessary, it was only necessary as to the July 17 car chase – not the chase from July 18. *See Estate of Clifton v. Southern Pacific Transp. Co.*, 709 S.W.2d 636, 639 (Tex. 1986) (court of appeals without power to reverse errorless judgment). Certainly, nothing on the face of the record would indicate that the putative lack of corroboration for the July 17 offenses would have anything to do with the July 18 offenses (in which Appellant was caught in the act and for which no corroboration was necessary). It bears mention, in fact, that whether the July 18 car chase even *needed* to be corroborated was never an issue. Not only was Haney's testimony elicited by Appellant, she actually tried to tell Appellant's side of the car chase. In any event, crashing the car and trying to run away from police certainly would "tend to connect" Appellant to the July 18 offenses.

All this assumes, of course, that there was indeed a lack of corroboration of Haney's testimony as it relates to the July 17 car chase. As the State will show next, however, that analysis by the Fort Worth Court was flawed – it ignored what happened the following day.

II. *Appellant's crimes on July 18 tended to connect him to the crimes committed on July 17.*

A conviction cannot be had on an accomplice's testimony unless it has been corroborated by other evidence tending to connect the defendant with the offense committed. TEX. CODE CRIM. PROC. art. 38.14. If there is an issue of fact with regard to whether a witness is actually an accomplice, the jury must decide the issue. An instruction will ask the jury to (1) decide whether the witness is an accomplice as a matter of fact, and (2) apply the corroboration requirement if it does decide he is an accomplice. *Druery v. State*, 225 S.W.3d 491, 498-99 (Tex. Crim. App. 2007).

An accomplice witness instruction, if necessary, is "law applicable to the case" – it must be submitted to the jury by the trial court, even if unrequested. *Zamora v. State*, 411 S.W.3d 504, 513 (Tex. Crim. App. 2013). Accordingly, if such an instruction was required, but was unrequested by the defense, an appellate court must review the record to determine if the defendant was egregiously harmed by its omission. *Id*. at 514; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). Under the egregious standard, improper omission of an accomplice witness instruction is generally considered harmless unless the corroborating (non-accomplice) evidence is "so unconvincing in fact as to render the State's overall case for conviction clearly and

significantly less persuasive." *Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002).

At the outset, it should be noted that there is nothing magical shielding consideration of the facts of a *different offense* when analyzing whether there is sufficient corroboration of an accomplice's testimony. In fact, extraneous offense evidence *should* be considered in a determination of whether there exists sufficient non-accomplice corroborating evidence. *See Lawton v. State*, 913 S.W.2d 542, 553 n.9 (Tex. Crim. App. 1995) ("We unequivocally hold that extraneous offense evidence is admissible under Rule 404(b) for the purpose of corroboration under Article 38.14."), *overruled on other grounds, Mosley v. State*, 983 S.W.2d 249, 263 (Tex. Crim. App. 1998). Therefore, to put it simply, the Court of Appeals was wrong not to consider the facts of the July 18 crimes when determining whether Haney's testimony about July 17 was sufficiently corroborated.

First, one should consider the nature of the July 18 events itself – a police car chase. "Flight" is a fact which may tend to connect a defendant to an offense. *See Passmore v. State*, 617 S.W.2d 682, 685 (Tex. Crim. App. 1981) (evidence which shows flight may serve to corroborate accomplice testimony); *see also Hernandez v. State*, 939 S.W.2d 173, 178 (Tex. Crim. App. 1997) (fact that defendant fled area after murder tended to connect him to crime and corroborated accomplice testimony). Here,

10

it is clear that, on July 18, police tried to pull over Appellant and he reacted by taking off. There is no ambiguity in this – Appellant led police on a car chase. The rational conclusion is that he did so because he knew he wanted to avoid arrest for the previous night's car chase and shotgun-assaults.

Second, it is no mere coincidence that Jamie Haney was with him for both car chases – and that both events were remarkably similar. Indeed, her presence helps connect Appellant to the events of July 17. The court of appeals in Eastland was faced with the similar situation of an accomplice who was with the defendant for two separate crimes. *Mitchell v. State*, No. 11-01-00294-CR, 2002 WL 32344526 (Tex. App.—Eastland 2002, no pet.) (unpublished). A woman (Mitchell's accomplice) testified that Mitchell waited in his car while she robbed a victim. *Id.* at *1. The victim testified but could only see the back of a man's head in the car next to her own. *Id.* The State presented evidence that the next day both the accomplice and Mitchell attempted to steal a purse from another woman. *Id.* This time, the victim was able to identify Mitchell. *Id.* Mitchell claimed that the accomplice's testimony was not sufficiently corroborated by other evidence. *Id.* at *2. The court disagreed:

> The non-accomplice testimony in this case consisted of the victim's account of what transpired and the evidence of the extraneous offense elicited from the victim of the extraneous offense and the police officer who investigated the offenses. As noted above, the circumstances of the two offenses were quite similar. The evidence of the extraneous offense

11

offered by the non-accomplices tended to connect [Mitchell] to the charged offense.

*Id*. at *3. Appellant's situation is the same. His putative accomplice was the driver in a car chase while Appellant was shooting at police. The next day, he participated in a similar crime with that same accomplice.

To the extent that Appellant's evading was interconnected with the previous day's car chase, it certainly "tended to connect" him to that crime. Although the roles of driver and passenger were reversed, the two sets of crimes were remarkably similar. Simply from the perspective of participating in a high-speed car chase with the same woman, on two successive days, in the same Jeep, the "doctrine of chances" alone should be sufficient to connect Appellant with the offense. *See De La Paz v. State*, 279 S.W.3d 336, 347-48 (Tex. Crim. App. 2009) ("extraordinary coincidence" of repeated unlikely extraneous conduct makes it more likely defendant committed charged offense). This is precisely what the *Mitchell* court was driving at when it found that "the circumstances of the two offenses were quite similar" – the similarity of the (well-proved) extraneous offense with the charged offense tended to connect the defendant to the charged offense. *Mitchell* at *3.

Nor should it be forgotten that Appellant was driving the same Jeep from the previous day's chase. On July 17, Haney was driving a Jeep and a man was shooting at

12

police from that Jeep. On the very next day, Appellant himself led police on another high-speed chase using *the very same Jeep* (this time with Haney as a passenger) and even went so far as to use that Jeep *as a weapon*. Certainly, if Appellant had used the same gun that had been used in a previous crime, that gun would connect him to that crime – in this case, the Jeep is no different. *See Lacaze v. State*, 346 S.W.3d 113, 117 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (defendant's use of same gun in extraneous robbery sufficiently corroborated accomplice testimony with regard to charged robbery); *see also Head v. State*, No. 03-10-00414-CR, 2013 WL 1831576 at *5 (Tex. App.—Austin April 24, 2013, no pet.) (evidence that robbery defendant had gun on night of robbery tended to establish his identity as one of the gunmen and corroborate the testimony of his accomplice) (unpublished); *In re P.A.*, No. 05-96-01264-CV, 1997 WL 470147 at *6 (Tex. App.—Dallas Aug. 19, 1997, pet. denied) (evidence that juvenile committed extraneous assault offense with sawed-off shotgun admissible in capital murder case (where one of the weapons at the scene was a sawed-off shotgun) because it corroborated the testimony of his accomplice).

## CONCLUSION AND PRAYER

On July 18, Appellant led police on a car chase and tried to hit an officer's car. Jamie Haney was with him. Haney testified that, the previous day, *she* led police on a car chase, driving the same car, with Appellant firing a gun. Appellant's unambiguous

participation in the July 18 chase tended to connect him with the events of July 17, and the Court of Appeals was mistaken to find no connection between the two car chases.

The failure to give an accomplice witness instruction as to the July 17 crimes could not have egregiously harmed Appellant. The Fort Worth Court's determination that Appellant was harmed should be reversed.

Respectfully submitted,

SHAREN WILSON
Criminal District Attorney
Tarrant County, Texas

DEBRA WINDSOR, Assistant
Criminal District Attorney,
Chief, Post-Conviction

/s/ James Gibson
JAMES GIBSON, Assistant
Criminal District Attorney
State Bar No. 00787533
Tim Curry Criminal Justice Center
401 W. Belknap
Fort Worth, Texas 76196-0201
(817) 884-1687
FAX (817) 884-1672
CCAappellatealterts@tarrantcounty.com

## CERTIFICATE OF COMPLIANCE

I certify that this document contains 2,877 words.

/s/ James Gibson
JAMES GIBSON

14

# CERTIFICATE OF SERVICE

A copy of the State's brief on the merits has been sent to opposing counsel, Hon. Barry G. Johnson, barrygj@aol.com, 2821 E. Lancaster, Fort Worth, Texas 76103 and to Hon. Lisa McMinn, information@spa.texas.gov State Prosecuting Attorney, P.O. Box 13046, Capitol Station, Austin, Texas 78711 on November 2, 2015.

/s/ James Gibson
JAMES GIBSON